## MOHR et al. *vs.* GAULT.

### APPEAL FROM CIRCUIT COURT, DANE COUNTY.

Heard November 17, 1859.]                    [Decided February 7, 1860.

10   513|
84   418|
10       615|
54 LRA   196|

#### *Water Courses—Nuisance.*

Where the outlet of a lake is obstructed by natural causes, so as to raise the waters in the lake, and cover the lands of an adjacent owner, he is not at liberty to drain off the waters by some other channel, conveying them in another direction from their natural outlet; but his efforts must be directed to the removal of the obstruction which caused the back water, leaving the owners along the stream in the legal enjoyment of the natural flow of the waters.

The obstruction of a running stream occasioned by the washing down of its banks, does not in law constitute a nuisance, unless such obstruction is attributable to the acts or agency of man.

This was an action commenced by Oscar Mohr, Francis Fischer, and his wife, against Francis Gault, to obtain a perpetual injunction to restrain him from directing the waters of Black Earth creek from their mill, in the town of Cross Plains. The complaint set forth that the creek had its rise in Mud Lake, in the town of Middleton, which was fed by springs and surface water, out of which the waters flowed west, and down the Black Earth creek. That east of the lake was an inconsiderable and narrow ridge of land, which formed the natural division between the waters flowing westerly down the creek, and those flowing eastwardly into Lake Mendota; that on the east side of the ridge is a large extent of country, known as Big Marsh, the waters of which are discharged through a stream known as Pheasant branch. That Gault was engaged in digging and excavating the earth of the ridge, between the Big Marsh and Mud Lake, for the purpose of draining the waters of Mud Lake into Big Marsh, and thence through Pheasant branch, and out of the Black Earth Creek. The complaint averred the practicability of this undertaking, and the damage to the complainant, and asked for judgment and injunction.

The answer denied that Mud Lake had its outlet through the Black Earth, but that it was through the Big Marsh and

Pheasant branch, until some twenty years ago, when the channel was filled up, and so raised the waters in the lake, and caused them to cut the channel at the west, down the Black Earth; that the defendant owned a tract of land lying partly in the east end of the lake, over which the waters had been raised, and that he was engaged in draining the waters from his land, so that it would become fit for use.

On the trial before the court, the court having duly considered the allegations and the evidence, found, as matters of fact:

1. That the plaintiffs owned and possessed the lands and improvements, as set forth in their complaint.

2. That they owned an available mill privilege, and were improving the same upon Black Earth creek, as stated in said complaint.

3. That the defendant owned the lands, to wit: the S. W. ¼ of N. E. ¼, sec. 9, and N. E. ¼ of S. W. ¼, sec. 8, Town 7, Range 8, in Dane county, Wis., and situated in said Mud Lake, as stated in said answer.

4. That said lands of the defendant, if divested of the waters of said lake, would be of value to the defendant, and that without they are valueless.

5. That Mud Lake is a body of water formed partially by springs, but mainly by rains and surface waters from the adjacent country, and that it has been subject to rise and fall, as affected by such rains and surface waters.

6. That there are at least two springs in the bottom of said lake, of the depth of seven feet; that the depth of said lake varies from two to seven feet; that throughout said lake there is open water, but that the main body is covered with vegetation.

7. That the lands of the defendant are covered with the waters of said lake, one tract of the depth of from two to three feet, and the other of a few inches.

8. That no springs are situated upon said lands of the defendant.

9. That the outlet of said lake, forming the head of Black Earth Creek, is about six feet wide, and the waters passing out of the same about one foot in depth.

10. That the defendant has excavated a ditch at the north east end of said lake, of sufficient depth to carry off the surface water of said lake to some extent, and threatens to continue excavating the same sufficient to draw off the water of said lake from the lands of the defendant.

11. That there is no perceptible fall from one end of said lake to the other.

12. That the waters of said lake have in the last twenty years been so high as to flow over the bank at the north east end of the lake, into the Big Marsh, towards 4th Lake, in instances of very high water.

13. That the place where said waters run into the Big Marsh, has since been raised by the cultivation of the land.

14. That the surface of the water of said Mud Lake is about seven feet higher than the ground in the Big Marsh.

15. That if the said ditch is excavated sufficiently deep, the whole of said Mud Lake may be drained into the Big Marsh.

16. That the outlet of said Mud Lake towards Black Earth creek has been filled up one foot and a half, by reason of a highway on one side, and cultivated land on the other, and the washing of the earth therefrom.

17. That the lands of the defendant have at some time, or some portion of them, been dry enough to cut hay therefrom.

18. That the natural flow of the water of said Mud Lake, at a natural stage of water, is into Black Earth creek.

19. That the said outlet into Black Earth creek can be easily excavated, so as to drain the lands of the defendant, without injury to the natural amount of water.

20. That the lands on the north and south sides of said lake, and the outlet into the Black Earth creek, are high and bluffy.

21. That the waters of said lake have been raised one foot and a half, by the artificial filling up of the outlet towards Black Earth creek, and that they have been raised even more than that, by surface waters running into said lake, from the adjacent country.

The conclusions of law upon these facts are:

1st. That the defendant has the right in any way to drain his said lands, by letting off the surface waters of said lake, to the depth of three feet, without injury to the natural flow of said lake towards Black Earth creek.

2d. That the waters upon the lands of the defendant constitute a private nuisance, which the defendant has a right to abate, in his own way, without committing a breach of the peace.

3d. That the defendant has the right to draw off the waters of said lake, to drain and reclaim his said lands, and that he

can do so without injury to the natural course and flow of the same to the premises of the plaintiff.

The judgment of the court will be, therefore, that the defendant be restrained from lowering said lake, by his excavation of the north east end of said Mud Lake, more than sufficient to drain his said lands.

On this finding it was adjudged, ordered, and decreed, that the said defendant, Francis Gault, and his agents, be, and they are hereby perpetually restrained and enjoined from digging and excavating the earth between said Mud Lake and Big Marsh, so as to drain and lower the waters of said lake more than three feet, the depth ascertained in said finding and decision to be sufficient to drain the said lands of the defendant, and from draining and lowering the waters of said lake in any other way or manner, more than three feet, than by and through the natural outlet of said lake into Black Earth creek; and it is further adjudged that each party pay the costs respectively incurred by them in this suit.

From which judgment this appeal is taken, by the plaintiffs.

*Abbott, Gregory & Pinney,* for the appellants.

*S. Crawford,* for the respondent.


*By the Court,* Dixon, C. J.   It seems to us that the facts found by the circuit judge do not sustain his conclusions of law.   As facts, he finds that Black Earth creek is the natural outlet for the waters of the lake; that at its source it is about six feet wide, and the waters passing out of it about one foot in depth; that it has been filled up about one foot and a half, by reason of a highway on one side, and cultivated land on the other, and the washings of the earth therefrom; and that from one end to the other, there is no perceptible fall in the lake.   As conclusions of law, from these facts and others, touching the defendants' title and occupancy of lands bordering upon and overflowed by the waters of the lake, which we need not here repeat, he finds that the defendant has the right *in any way* to drain his land, by letting off the surface water of the lake, to the depth of three feet, without injury to

the natural flow of the lake towards the creek; and that the waters upon the lands of the defendant constitute a private nuisance, which the defendant has the right to abate, in his own way, without committing a breach of the peace.

It is difficult to perceive how the first conclusion is supported by the facts. If there is but one foot of water flowing over the bed of the creek at the point where the waters of the lake enter it, and there is no perceptible fall, or difference in the height of the surface of the lake from one end to the other, as was found, and as appears to have been mathematically demonstrated, how can the defendant be permitted, by a ditch turning the waters in an opposite direction, into Big Marsh, to drain the lake to the depth of three feet, without entirely destroying the flow of waters into the creek? Certainly he cannot. The present bed of the creek would then be about two feet above the surface of the lake. If it was reduced one foot and a half, to its original condition, it would still be one half foot above the surface of the water in the lake, after it was so drained.

It may be doubtful, from the facts found, whether, according to the definitions given in the books, the obstructions at the head of the creek, occasioned by the washing of the earth, is or is not a nuisance. If the washing in of the earth was purely accidental, and not directly attributable to the acts of man, it would not be. Blackstone defines a nuisance to be "anything that worketh hurt, inconvenience, or damage," and treats of it throughout as something brought about through human agency. Bishop, Vol. 2, § 848, says, "that all acts put forth by men, which tend directly to create evil consequences to the community at large, may be deemed nuisances, where they are of such magnitude as to require the interposition of courts." It is not, however, necessary for us to determine here whether this obstruction is or is not a nuisance, for if it is, the defendant's remedy lay in abating it, if he

could do so by peaceable means; and if not, he must resort to his action for that purpose. If it is not a nuisance, as defined in the law, but an accidental obstruction, he must either endure it, or proceed to remove it; and which, we will not here attempt to say. According to the doctrine laid down in *Prescott vs. Williams*, 5 Met., 429, he might perhaps remove it, as being necessary to the use and enjoyment of his lands. In neither case has he the right to rid himself of the annoyance by diverting the waters of the lake from their natural outlet. The owners along the creek have a legal right to the natural and usual flow of the waters of the lake through it; and the efforts of the defendant must be directed to the removal of the obstruction or cause of the backwater, which in law constitutes the nuisance.

The judgment must be reversed, and the cause remanded for further proceedings, in accordance with this opinion.