Larson and others vs. Furlong and others.

LARSON and others vs. FURLONG and others.

*December 17, 1880 — January 11, 1881.*

NUISANCE, ETC. *Rights of private person in respect to pourpresture or public or private nuisance.*

Where a dock built by A. in the waters of a navigable lake, upon land belonging to the state or to any third party, is in A.'s possession, B. cannot lawfully interfere with it on the mere ground that it is a pourpresture or a *public* nuisance; and even if it were a private nuisance in respect to him, or if, it being a public nuisance, he could recover damages for a special injury caused by it to himself, or might lawfully remove it as obstructing the exercise of his rights, this would give him no right to take the materials of the dock and convert them to his own use.

APPEAL from the Circuit Court for *Kewaunee* County. The case is thus stated by Mr. Justice TAYLOR:

"The following is the complaint in this action: 'The plaintiffs complain against defendants and allege, that on the first day of June, 1876, they were the owners and lawfully in possession of a certain dock or wharf, then lawfully being in the waters of Washington harbor, and near the shore thereof, in the town of Washington, county of Door, and state of Wisconsin, being the same dock or wharf which had in said year

been then and there erected by the plaintiffs, and being of the value of $5,000; that on said first day of June, 1876, the above-named defendants, at said town and county, wrongfully, wilfully and maliciously entered upon said dock of the plaintiffs and wrongfully and maliciously tore down and destroyed the same, and removed the materials of which said dock was composed, and converted them to their own use; that said wrongful acts of defendants were done by them from vindictive and malicious motives against the plaintiffs, and with the wilful, malicious and vindictive design and purpose on their part to injure these plaintiffs and their property to the greatest extent possible; and that the plaintiffs have thereby been damaged in the sum of $10,000. Wherefore the plaintiffs demand judgment against the defendants for the sum of $10,000.' The defendants answered by a general denial.

"The evidence given on the trial showed that the plaintiffs, in March, 1876, formed themselves into an association for the purpose of building a dock in the waters of Washington harbor, and that in execution of such purpose they built a dock one hundred and forty-four feet in length, composed of cribs made of pine timber and filled with stone. The cribs were sixteen feet wide, and covered with plank and timbers. The shore end of the cribs was within twenty feet of low-water mark, and they extended from that point into the navigable waters of the harbor. The work and materials in the dock cost the plaintiffs about $850. It was intended by the plaintiffs to connect the shore end of the dock with a public highway, which was supposed to have been lawfully laid out by the proper authorities, terminating at the shore of the harbor. One of the witnesses of the plaintiffs testified that the plaintiffs wanted to build the dock because *Furlong*, the defendant, had the only dock on the island that they could ship their stuff over, and that he charged them, according to their views, unreasonable prices; and not only that, but he would not allow them to pass anything over his dock to sell themselves. He

would not allow them to use his dock to sell their produce on. They were going to build the dock in the water, not because they owned the land, but because they wanted to have a dock to use, and they were going to have the town lay out a road to the water.   The evidence shows that the last work was done on the cribs and dock by the plaintiffs in the forepart of May.   In June an injunction was served on the plaintiffs enjoining them from doing any further work, and in the latter part of June the defendant *Furlong* took away, and converted to his own use, the cribs and stone composing the dock.   The following is the evidence upon this point:  William Anderson, a witness for the plaintiffs, testified: 'In the latter part of June there were three or four men there in a boat taking the stone out of the cribs.   *Mr. Larson* and I forbade their doing it, but they would not stop.   I was sent to *Mr. Furlong*.   I asked him if he had sent these men across to take out the stone, and he said he had.   I said, I came to give you notice that you must not take any more.   He said, That is what I am going to do.   I said, I heard that you were going to take out the logs and use them to build up your pier, and I hereby notify you to leave the logs where they are.   He answered, I am going to take the logs, and I am going to take the whole work out, and you can sue me if you think it belongs to you.   He said the dock belonged to him.'   There was evidence showing that *Furlong* took the cribs away.   None of the plaintiffs or their servants lived on the dock after the work stopped, but the same witness testified that the cribs were looked after by the plaintiffs to see that they were not taken away.   Upon the close of the plaintiffs' testimony, the circuit court nonsuited them upon defendants' motion."

Plaintiffs appealed from the judgment of nonsuit.

The cause was submitted for the appellants upon the briefs of *Tracy & Bailey:*

1. Even though this dock were held to be a public nuisance, the builders can recover damages for its wilful destruction, or

even for an injury resulting to it from the negligence of another. A private person may abate a public nuisance only when he suffers a special injury, in the violation of his clear and well defined right. Wood on Nuisances, §§ 729, 731, 737; *Mayor v. Brooke,* 7 Q. B., 339; *Dimes v. Petley,* 15 Q. B., 276; 3 Bl. Comm., 5; *Rex v. Pappineau,* Strange, 688; *Harrower v. Ritson,* 37 Barb., 301; *Griffith v. McCullom,* 46 id., 561; *Brown v. Perkins,* 12 Gray, 89; *State v. Keenan,* 2 Ames (R. I.), 497; *Rogers v. Rogers,* 14 Wend., 131; *Moffett v. Brewer,* 1 Greene (Iowa), 348; *Clark v. Ice Co.,* 24 Mich., 508; *Harrington v. Edwards,* 17 Wis., 586; *Castello v. Landwehr,* 28 id., 522. The dock is not a pourpresture. The owner of the adjoining land might lawfully have built such a structure, and therefore the intrusion, if any, is not upon a public but upon a private right. 2. The defendants have appropriated to their own use the materials of which the dock was constructed. When called upon to answer for this wrongful act, they cannot allege or reply a separate and distinct wrongful act on the part of the plaintiffs. *Sutton v. Wauwatosa,* 29 Wis., 21; *Mohney v. Cook,* 26 Pa. St., 342. 3. The possession of the plaintiffs was sufficient title as against a wrong-doer. 1 Hilliard on Torts., 499.

For the respondents there was a brief by *Hudd & Wigman,* and oral argument by *Mr. Hudd:*

1. The action is one of trespass *quare clausum.* The plaintiffs proved neither ownership nor lawful possession of the premises. 2. The dock was a public nuisance, being an unlawful interference with the navigable waters of Lake Michigan. It affected the private interest of the defendants, and they might therefore abate it. Wood on Nuisances, § 730; *Richardson v. Emerson,* 3 Wis., 319; *Barnes v. Racine,* 4 id., 454; *Yates v. Judd,* 18 id., 118. 3. The dock was a pourpresture, and no title thereto vested in the makers. *Diedrich v. R'y Co.,* 42 Wis., 248; *Att'y General v. Booming Co.,* 34 Mich., 472; *Moore v. Jackson,* 2 Abb. New Cases,

211. Plaintiffs could have no lawful possession of this unlawful structure. They cannot be allowed to prove the illegal act as a foundation for the right of recovery. *Melchoir v. McCarty*, 31 Wis., 252; *Holt v. Green*, 73 Pa. St., 198; *Maybin v. Coulon*, 4 Dall., 298; *S. C.*, 4 Yeates, 24; *Swan v. Scott*, 11 S. & R., 164; *Thomas v. Brady*, 10 Barr, 170; *Scott v. Duffy*, 2 Harris, 20; *Seidenbender v. Charles*, 4 S. & R., 159; *Coppell v. Hall*, 7 Wall., 558; *Morck v. Abel*, 3 Bos. & Pul., 35; *Armstrong v. Toler*, 11 Wheat., 258; *Collin v. Blantern*, 1 Smith's L. C. (6th Am. ed.), 630.

TAYLOR, J. It is not very clear upon what ground the learned circuit court ordered the nonsuit, but, from the grounds set out by the attorney for the defendants in moving for the nonsuit, it is probable that it was ordered for the reason that the plaintiffs had neither shown possession of the dock in question, nor a right to possession.

If the nonsuit was ordered on that ground, we are clearly of the opinion that it cannot be sustained. The plaintiffs showed that they had recently built the dock or cribs, and thereby they showed actual possession whilst such building was going on. Shortly before the defendants removed the cribs and stones, they had been enjoined from further prosecuting their work. There is no evidence that the plaintiffs abandoned the possession, and, on the other hand, the evidence shows that after they were enjoined from doing any further work, and up to the time the defendants removed the same, they kept watch over the work to see that it was not injured or removed. We think the evidence showed the possession of the dock or cribs in the plaintiffs at the time the defendants removed them. They had all the possession they could reasonably be required to have, and the acts of the defendants were a clear invasion of the plaintiffs' possession of the dock or cribs, which had been constructed with their labor and money. The plaintiffs showed they had in their possession and control the timber

and stones out of which the cribs were made; and that they caused the same to be made with their money; that they placed them in the position they were in when the defendants took and converted them to their own use.. They clearly make out a *prima facie* case of ownership, and, if the defendants question such ownership, the burden of proof is upon them to show that they have a better right. We do not think the action is an action for trespass *quare clausum* upon the plaintiffs' real estate. It is an action for the conversion of personal property owned by the plaintiffs, and as such the proof of possession and ownership was sufficient to entitle them to recover, unless the fact that the plaintiffs had placed their property in the navigable waters of Washington harbor was a forfeiture of their right of ownership, and gave the defendants, or any other person, the right to take such property for their own use, on the theory that the right of property in the cribs and stones placed by the plaintiffs in the navigable waters of the state was like the right of property in the fish inhabiting such waters — in no particular person,— and the first taker would become the lawful owner.

Upon this appeal the learned counsel for the respondents insist that the judgment should be affirmed, not only upon the ground above stated and taken by them in the court below, but upon the ground that the dock or cribs were a public nuisance, and for that reason the defendants had the right to remove the same and convert the material to their own use; and, second, upon the ground that the structure was a pourpresture, and the plaintiffs, if they ever had any title to the materials of which the cribs were constructed, lost such title by placing them in the navigable waters of the state. Admitting for the present that the dock or cribs were a public nuisance, is there anything in the evidence in the case which would justify the defendants in abating the same and converting the materials to their own use? It seems to be now well settled by the great weight of authority, that a private person can neither

Larson and others vs. Furlong and others.

maintain an action to prevent the erection of or to abate a public nuisance, without alleging facts showing that he will suffer some special damage not common to the rest of the public by the erection of such nuisance, or, in an action to abate the same, that he has suffered some injury peculiar to himself and not common to the public. This doctrine is established beyond controversy by Wood, in his work on the law of nuisances, by a very elaborate and exhaustive citation of the authorities. See §§ 618–676, inclusive, of that work. This rule has been recognized and affirmed by the decisions of this court. *Walker v. Shepardson,* 2 Wis., 384; *S. C.,* 4 Wis., 486; *Barnes v. Racine,* id., 454; *Carpenter v. Mann,* 17 Wis., 155; *Newell v. Smith,* 23 Wis., 261; *Greene v. Nunnemacher,* 36 Wis., 50; *Remington v. Foster,* 42 Wis., 608.

It seems to us that it follows logically from this rule in regard to the maintenance of an action by a private person to prevent or abate a public nuisance, that if such private person undertakes to abate such public nuisance without action, in order to justify himself he must show that such nuisance was injurious to his private interests, and that he has suffered private damage, not common to the public, by the erection and continuance thereof. This proposition, we think, is also well established by the authorities cited by the learned author above quoted. See pp. 750–769, and cases cited. Upon this subject the author says: "The public, through the intervention of the law as administered by the courts, avenges its own injuries and remedies its own wrongs. No individual, under any circumstances, is justified in abating a purely public injury, and should he attempt the experiment he would find himself involved in serious consequences. Again, no one ever entertained an idea that a manufactory which, by reason of its operations, produced such noxious smells and vapors as to produce a public injury and become a nuisance, was at the mercy of any person who might see fit to enter into and destroy its machinery. If such were the rule, a stranger, who suffered

no inconvenience from its operations, a resident of another city, town, or state even, might, with impunity, from motives of malice or mischief, prey upon the manufacturing or other interests of a community *ad libitum.* Such would be the legitimate fruits of the doctrine, and the law would thus be converted into a shield to be used by any man or set of men who desired to gratify their malice or other propensities for mischief. But no case has ever warranted such doctrine. The courts, with some few exceptions, which will be noticed hereafter, have always exercised the highest and most rigid caution in cases involving these questions."

The following are some of the authorities supporting this doctrine: *Blodgett v. Syracuse,* 36 Barb., 529; *Brown v. Perkins,* 12 Gray, 89; *Ely v. Supervisors,* 36 N. Y., 297; *Mayor of Colchester v. Brooke,* 7 Q. B., 339; *Dimes v. Petley,* 15 Q. B., 276; *Cobb v. Bennett,* 75 Pa. St., 326; *Cooper v. Marshall,* 1 Burr., 260; *Rex v. Pappineau,* Strange, 688; *Harrower v. Ritson,* 37 Barb., 301; *Griffin v. McCullom,* 46 Barb., 561; *State v. Keenan,* 2 Ames (R. I.), 497. In the case of *Brown v. Perkins,* 12 Gray, 89, Chief Justice SHAW says: "The true theory of the abatement of a nuisance is, that an individual citizen may abate a private nuisance injurious to him, when he could also bring an action; and also when a common nuisance obstructs his individual right, he may remove it to enable him to enjoy that right, and he cannot be called in question for so doing. As in case of an obstruction across a highway, and an unauthorized bridge over a navigable water-course, if he has occasion to use it, he may remove it by way of abatement. But this would not justify strangers, being inhabitants of other parts of the commonwealth, having no such occasion to use it, to do the same. Some of the earlier cases, perhaps, in laying down the general proposition that private subjects may abate a common nuisance, did not expressly mark this distinction; but we think, upon the authority of modern cases, where the distinctions are more

accurately made, and upon principle, this is the true rule of law." This doctrine has been approved by implication, if not expressly, in the following cases in this court: *Castello v. Landwehr*, 28 Wis., 522; *Mohr v. Gault*, 10 Wis., 513; *Barnes v. Racine*, 4 Wis., 454; *Williams v. Fink*, 18 Wis., 265.

The learned counsel for the respondent seems to admit the justice of the rule above stated, but justifies his clients in abating what, if a nuisance at all, was clearly a public nuisance, on the ground that it was specially injurious to the plaintiffs. We fail to find any evidence in the case which shows that the defendants had any more right to complain of this erection in the public waters of the state than any other person. There is no evidence tending to show that it impeded persons approaching their docks or interfered in any way with the lawful use of their property. The cribs had not, at the time they were removed, been used for any purpose by the plaintiffs, and the intention to use them in the future in a way which might injure their business was no justification for their destruction. The nuisance, if any, was in the obstruction of the navigable waters of the state; and if that obstruction did not specially injure the defendants, they had no right to destroy it because its use might injure their business. If the dock had been used in the way it was intended to be, it would not have been a public nuisance. Such use would have been in aid of commerce and navigation, and lawful. If the plaintiffs had procured a public highway to be laid out on the island terminating at the shore of the harbor, and had connected their dock or cribs with such highway, with the assent of the public authorities, it would then have become a structure in aid of navigation, and would have been a lawful structure, unless so constructed as to unnecessarily obstruct the navigation of such harbor, within the rule laid down by this court in *Diedrich v. Railway Co.*, 42 Wis., 248. The evidence does not show that defendants' docks were such in their use

as required the protection of the state and demanded the destruction of all other docks which would tend to relieve the public from the unjust monopoly of the trade of the island, which the evidence tended to show was held and controlled by the defendants.

It is very clear to us that the evidence does not show that the plaintiffs' cribs or docks so injured or interfered with the rights of the defendants as to entitle them to recover damages of the plaintiffs for their maintenance, and therefore the defendants were not justified in removing them as a public nuisance. But, if the cribs were a private nuisance to the defendants, as well as a public nuisance to the state, the defendants would not be justified in converting the materials of the unlawful structure to their own use.    The right of the defendants must be limited to the mere abatement of the nuisance, in so far as it affects their rights injuriously. *Rex v. Pappineau*, Strange, 688; *Dimes v. Petley*, 15 Q. B., 276.    The right to abate does not include the right to convert the structure to the private use of the party injured thereby, and who abates the same.    Wood on the Law of Nuisances, 757, § 736.    The property of a man does not become outlawed because he may have placed it where it becomes a public or private nuisance.    If he has so placed his property that it becomes a private nuisance, he subjects it to the hazard of being injured by the aggrieved party to the extent necessary to remove the nuisance; but he does not thereby authorize the person injured to convert the property to his own use.    If an individual should leave his wagon or other farming implements in the highway, or should pile his wood within its bounds, so that they became an obstruction to travel thereon, any one hindered or obstructed in traveling such highway might lawfully remove them out of the highway; but we think he would not be justified in taking them away and converting them to his own use.    So, if the owner of a boat or raft of logs should anchor them in a navigable river, so as to obstruct the passage of other boats or rafts, the owners of such

other boats would have the right to remove the obstructing boats or rafts, so as to enable them to navigate the river with their own, but they would not be justified in taking possession of the obstructing boat or raft and converting it to their own use.

It is claimed by the learned counsel for the respondents, not only that they were justified in abating the plaintiffs' dock as a public nuisance, but that, under the decision of this court in the case of *Diedrich v. Railway Co.*, *supra*, the plaintiffs lost all title to their property by placing it, without authority, in the navigable waters of the state. We think the learned counsel is mistaken as to what was in fact decided in that case. The only thing decided in that case was, that a riparian owner could not extend his ownership over the bed of Lake Michigan beyond low-water mark by embankment from the shore, or by making a breakwater beyond such mark, and thereby causing the shore between low-water mark and the breakwater to fill up and become dry land, when such embankment or breakwater was not made in aid of navigation, or for the purpose of protecting the land of the riparian owner against the wash of the lake. The railroad company had constructed the line of their road over what appeared at the time such decision was made to have been land made either by such embankment, or by the use of such breakwater; and the question was whether the land so formed was owned by Diedrich as a part of his lot adjoining the lake, or whether the title was in the state. The court held the title was in the state, because it was the established law of this state that the owners of lands bordering on Lake Michigan took no title to the lands under the waters of the lake, but that the title in fee to the lands covered by the waters of said lake was in the state, and that such title could not be divested by the unauthorized acts of the riparian owner. There was no question in the case as to what the rights of the parties would have been in an action of trespass for a breach of the close, in case the plaintiff had proved himself in the actual possession of the reclaimed land, and

the defendant had entered as a mere trespasser, not claiming any right to enter under the state. In the Diedrich case the right of the railroad company to enter upon and take the lands in question, for the purposes of a railroad, was admitted by all parties, and the only question was, who held the legal title to the land taken and occupied by it. As the evidence in the case showed, as this court thought, that the *locus in quo* had been at one time a portion of the bed of Lake Michigan, and that such bed of the lake had not become a part of the dry land by accretion, or by any other means which by law divested the state of the title in fee which it had in such lands while covered by the waters of the lake, such title still remained in the state, and not in Diedrich.

In the case at bar there is no question as to the title in fee of the lands under the lake, where the plaintiffs placed their cribs or dock. It is admitted that it is in the state. It is shown that the cribs were the property of the plaintiffs, and were in their possession when the defendants removed and converted them to their own use. The fact that the plaintiffs' property was placed on lands belonging to the state, does not make their rights, as against these defendants, different from what they would have been had they placed their property on the lands of a private citizen without his consent. In either case the defendants would have no right to interfere with it, unless by license from the person owning the lands upon which it was placed, or unless the property was a private nuisance to them, or a public nuisance from which they suffered special damage. The defendants having failed to show by the evidence in the case that they had the right to remove the same as a nuisance injurious to their rights, or that they had any authority from the state to remove the same, they have failed in showing any authority for interfering with the plaintiffs' property, and the court was clearly wrong in ordering the nonsuit.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial.