THE CITY OF ORLANDO, APPELLANT, VS. JOHN M. PRAGG, APPELLEE.

ABATEMENT OF NUISANCE BY MUNICIPAL CORPORATIONS—NO LIABILITY FOR ACTS ULTRA VIRES—PLEADINGS.

1. A municipal corporation is not liable for tortious acts committed by its officers and agents, unless the acts complained of were committed in the exercise of some corporate power conferred upon it by law, or in the performance of some duty imposed upon it by law. Such a corporation is liable in damages for a *lawful* and *authorized* act of its agents done in an *unauthorized manner*, but not for an *unlawful* or prohibited act.

2. Where the declaration, in a suit in tort against a municipal corpor_ ation, does not show upon its face, that the acts complained of were such as to be wholly outside of all corporate powers or duties, or that, from their nature, were impossible of commission by the corporation in the exercise of any corporate power conferred upon it by law, or in the performance of any duty imposed upon it by law, it is not subject to demurrer on the ground that the acts complained of ,were *ultra vires*.

3. If the act complained of be such that the corporation could not commit it under any circumstances in the exercise of any power or authority conferred upon it by law, then it is *ultra vires,* and the municipality cannot be held liable therefor; but, if the act be not *ultra vires* in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances, then it can be held liable therefor.

4. The power conferred, in general terms, on municipal corporations to *prevent* and *abate* nuisances, cannot be taken to authorize the condemnation of that as a nuisance which, in its nature, situation, or use, is not such *in fact*. And if the city, acting under the general power, abate that as a nuisance that is *not such in fact*, it does so at its peril, and is liable for the damage done, if it turns out in proof that it has made a mistake.

5. Where *the fact* of nuisance is clear, the city is then under the obligation to exercise the power of abatement in a reasonable manner so as to do the least injury to private rights, and if i exercises the power of abatement in an unreasonable, careless or negligent manner, so as to produce unnecessary damage, it will be liable for the damage caused by such negligence.

6. Where the *fact* of nuisance is clear, and the owner is notified thereof and given a reasonable opportunity to remove the same, and he fails, and the city, acting under its general power, or as the agent of the county board of health who have the same powers of abatement, then abate the same, in such man_ ner as not to cause unnecessary damage to the owner. then the city is not liable for any damage resulting from such abatement.

Upon appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion.

*Wm. H. Jewell* for Appellant.

*J. Hugh Murphy* for Appellee.

TAYLOR, J:

John M. Pragg, the appellee, sued the city of Orlando, the appellant, in trespass, the following being the declaration filed in the case: "And now comes the plaintiff, John M. Pragg, by his attorneys, Mershon & Rogers and J. Hugh Murphy, and complains of the defendant, the city of Orlando, of a plea of trespass on the case, for, that, whereas, on or about the 6th day of July, A. D. 1887, the plaintiff was engaged in the business of a dealer in natural curiosities, and had attached to his shop a museum for the exhibition of live and stuffed animals of various kinds for profit; and while so engaged in business, and on or about the day and date aforesaid, the said defendant by and through its mayor, city council, servants, agents and employes, entered in and upon the premises of the plaintiff where said business hereinbefore mentioned was, by the plaintiff, being carried on, and situated on the west side of Orange avenue, between Pine and Church streets, in the said city of Orlando, and without just cause, did then and there remove, destroy and

8

deprive the plaintiff of the ownership, sale, use and benefit of the following described property, to-wit:

Two water-turkeys in coop,

Two coons in cage,

One dozen snakes (mixed) and two cages,

Two snipes and cage,

One owl and cage,

Three turtles and cage,

One lot chickens and cage,

Five alligators,

One lot chicken and animal houses,

One lot of shells,

One fox,

One lot of pea-fowls;

whereby the plaintiff sustained damages in the sum of six hundred and thirteen dollars, and whereby plaintiff was further injured in his business, to his damage in the sum of two hundred dollars, wherefore plaintiff demands judgment for sixteen hundred dollars and costs of this action.

To this declaration the defendant municipal corporation demurred upon the ground that a city is not liable for illegal acts of its agents, and for "other causes appearing upon the face of the papers." This demurrer being overruled, the case went to trial upon a plea of the general issue, and resulted in a verdict and judgment for the plaintiff in the sum of $300, and from this judgment an appeal is taken here.

The first error assigned is the order overruling the defendant's demurrer to the plaintiff's declaration.

The contention of the appellant here upon this assignment is, that the declaration does not exhibit a case of corporate liability because it does not show that the defendant city was acting within the scope of its corporate powers as prescribed by law, or that it was performing any duty imposed upon it by law, when it committed the acts complained of.

The law is well-settled that municipal corporations can be held liable for tortious acts only that are committed while in the exercise of some power conferred upon them by law, or in the performance of some duty imposed upon them by law. "Where the act which produces the injury is outside of the powers conferred on the coporation, it can not be held in damages. A municipal corporation is liable in damages for a *lawful* and *authorized* act of its agents done in an *unauthorized manner*, but not for an *unlawful* or prohibited act." Lawson's Rights, Remedies and Practice, Vol. 7, Section 4010; Cooley on Torts (2nd ed.), 141; Field on Damages, Sec. 80; City of Chicago vs. Langless, 52 Ill., 256; Anthony vs. Inhabitants of Adams, 1 Met., (Mass.), 284; Hunt vs. City of Boonville, 65 Mo., 620; Mayor vs. Cumliff, 2 N. Y. (2 Comstock), 165; Hanvey vs. City of Rochester, 35 Barb. (N. Y.), 177; Schumacher vs. City of St. Louis, 3 Mo. App., 297. In discussing this rule, however, Mr. Dillon, in his work on Municipal Corporations (3rd ed.), Section 968, says: "The rule of law is a general one, that the superior or employer must answer civilly for the negligence or want of skill of his agent or servant in the course or ine of his employment, by which another is injured.

Municipal corporations under the conditions therein stated, fall within the operation of this rule of law, and are liable, accordingly, to civil actions for damages when the requisite elements of liability coexist. To create such a liability, it is fundamentally necessary that the act done which is injurious to others must be *within* the scope of the corporate powers as prescribed by charter or positive enactment (the extent of which powers all persons are bound, at their peril, to know); in other words, it must not be *ultra vires* in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances. If the act complained of is *wholly outside* of the general or special powers of the corporation as conferred in its charter or by statute, the corporation can in no event be liable, whether it directly commanded the performance of the act, or whether it be done by its officers without its express command; for a corporation can not, of course, be impliedly liable to a greater extent than it could make itself by express corporate vote or action. But if the wrongful act be not in this sense *ultra vires*, it may be the foundation of an action of tort against the corporation, either when it was done by its officers under its previous direct authority, or has been ratified or adopted, expressly or impliedly, by it, or when it was done by the officers, agents or servants of the corporation, in the execution of *corporate powers*, or the performance of *corporate* duties of a ministerial nature, and was done so negligently or unskillfully as to injure others, in

which case the corporation is liable for the careless-ness or want of skill of its officers or immediate servants or agents in the course of their authorized employment, without express adoption or ratifying act. Such are the general principles of law, concerning which there is no disagreement." And again, in Section 969, the same high authority says: "The principle that a municipal corporation is bound by the acts of its officers only when within the charter or scope of their powers, and that acts wholly outside of the powers of the corporation, or of the officers appointed to act for it, are void as respects the corporation, is vital; and the opposite doctrine has no support in reason, and very little, if any, in the judgments of the courts." Does the declaration here questioned show affirmatively upon its face that the acts complained of were *wholly outside of* and beyond any and every corporate power that the municipality had legal authority to exercise, so as to render it amenable to demurrer under the rule thus clearly laid down by Mr. Dillon? We think not. Under the provisions of Section 20, p. 249 McClellan's Digest (Sec. 677 Fla. Rev. Stat.), cities and towns generally are clothed with authority and power to prevent and abate nuisances, and to prevent or remove any accumulation of filth or other matter on or within premises within their limits which may cause disease, or affect the health of the city or town. It was developed in the proofs at the trial below that the acts complained of were committed in the exercise of this power conferred by law to prevent and abate nuisances. Consequently they can not be said to be acts

that, within themselves, are of such nature as to be impossible of commission, under any circumstances, by the city in the exercise of any corporate power conferred upon it by law. The contention of the appellant, that the acts complained of were *ultra vires*, is untenable, and the order overruling the demurrer was proper.

There are many errors assigned, but as the judgment appealed from must be reversed upon the sixteenth assignment of error, viz: the overruling of the appellant's motion for a new trial, the discussion of that one alone will fully dispose of all questions applicable to the case.

Two of the defendant's grounds of its motion for a new trial, that was overruled, were, that the verdict of the jury was contrary to the evidence, and, contrary to the law of the case. The plaintiff, Pragg, alone testified in his own behalf, and, in substance, as follows : That he was the plaintiff. That at the time of the alleged injury he was engaged in business in the city of Orlando; that he kept a kind of curiosity store and museum; that in the front shop he kept various fancy wares, jewelry, shells, stuffed animals, etc., and in the yard in th. rear he had animals of various kinds, among others water turkeys, coons, snakes, alligators, turtles, snipes, chickens, owls, lot of shells, etc. That on the 6th of July, as alleged in the declaration, Mr. Hodges, the city marshal of Orlando, came to his place of business with other policemen and carts and took and carried away all the animals, shells, etc., which witness

had in the yard, and took them out of the city limits and turned them loose. He gave a list of the things taken, together with his valuation of each item, the whole aggregating $1,390. That all of said property was thus lost to him except that he afterwards recovered some of the shells. He did not go with the property when taken, and made no effort to recover it. The loss to his business was $200. He demanded payment for his said property from defendant, who offered him $50, which he refused. This was the only evidence put in for the plaintiff at the trial below.

On behalf of the defendant E. J. Reel testified that about the time alleged, and before, he was a member of the county board of health for Orange county; that the plaintiff's premises had been complained of in June and July to the board several times by neighbors as offensive to sight and smell; that plaintiff had been notified to clean up same, and keep same clean and inoffensive; this order was given to him by the board one or two weeks before the removal of the property by the city marshal. Finally the premises were visited and inspected by the board, and found in such offensive condition as to the yard where the animals were kept that the board in regular session declared the premises a nuisance, and the city council of Orlando was directed to have said nuisance abated.

Dr. J. W. Hicks testified for the defendant, that in June and July, 1887, he was secretary of the county board of health of Orange county; was also city physician of Orlando, and city health officer; that he had

several times prior to the removal of plaintiff's prop-
erty, as alleged, inspected said premises and found
them in bad sanitary condition. The animals created
offensive smells, and water decaying in shells was very
offensive. He had several times ordered said premises
cleaned. As secretary of said board of health he had,
by order of said board, sent official communication to
the city council of Orlando, about June, 1887, notify-
ing them that the premises of plaintiff where the ani-
mals were kept had been declared a nuisance by the
board, and said board directed said council to have
same abated at once.

J. K. Duke, city clerk of the defendant city, also
for the defendant, identified the minutes of the city
council of said city, wherein said minutes showed that
the action of the board of health declaring plaintiff's
premises a nuisance, and ordering same abated by the
city had been duly communicated to said council.

P. C. Hodges, also for the defendant, testified that
he was city marshal of Orlando in June and July,
1887, and on or about the time alleged, he was ordered
by a member of the city council to notify the plaintiff
to remove the animals and shells kept on his premises
in the yard, and to abate the same, the same having
been declared a nuisance, and to carry same out of the
city limits. That he gave plaintiff such notice, and
twenty-four hours in which to remove same. He
was directed that on failure of plaintiff to remove and
abate said nuisance on notice, to remove and abate
same himself. Mr. Giles, chairman of the committee

City of Orlando v. John M. Pragg.—Opinion of Court.

on street sanitation, gave him the order. After giving plaintiff the notice, and he failing to remove said animals, witness, after notifying plaintiff what he was about to do, took and carried away said animals and shells, and left same outside of city limits—doing no unnecessary injury or damage to anything. The animals were turned loose.

N. L. Mills, for defendant, testified that he was a member of the city council at the time of the removal of the plaintiff's property as alleged, and was one of the committee to enquire into damages. Reported in favor of an allowance to plaintiff of $50.00; not that he thought it due plaintiff, but to settle matters without litigation. That he was familiar with the value of property such as plaintiff had, and which was taken, or alleged to have been, and that he knew what animals and other property plaintiff had in said yard and that said marshal removed, and that the whole lot was not worth $100.

The foregoing is the substance of the entire evidence in the cause. In the evidence adduced for the defendant there is very clear and direct proof that the property of the plaintiff that was taken and removed from the city limits was *in fact* a nuisance, creating filth and noxious smells deleterious to the public health. The proof shows further that he had been notified and warned, a week or two prior to its enforced removal, to clean up his premises and to keep the same clean. It was proved also that his neighbors complained of his premises. It was proved also that the officials of

the county board of health visited and inspected his premises and found it to be a nuisance, and afterwards in an official meeting of the board formally declared the property to be a nuisance, and officially directed the city council of the defendant city to abate it as such. It was further proved that the city marshal then notified the plaintiff of this action of the county board of health, and that the city council required him to remove the offensive matter from his premises, and that he would be allowed twenty-four hours in which to do so; and if not done then, the marshal himself would remove same. That failing to remove them himself within the time given him, the marshal then removed the offensive property beyond the city limits after informing plaintiff what he was about to do. The marshal swears that in removing them he did no more damage to anything than was necessary in the removal thereof. The plaintiff himself swore that he did not go along with the property when removed to look after or take care of same. To all of this evidence for the defendant there is not a word of contradiction or denial, nor any attempt even at a denial thereof from the plaintiff himself or anyone else. By the provisions of Chapter 3603, Laws of Florida, approved February 16, 1885, the Governor of this State was required to appoint in each county a board of health consisting of five members; which board by said act was made a corporation. By Section 8 of said act said boards of health in their respective counties were given full power to act in regard to all matters pertaining to quarantine, public health, vital statistics and *the abate-*

*ment of nuisances*, and to appoint such agents as they might find necessary.

The uncontradicted proof of the defendant shows that the plaintiff's property removed was in fact a nuisance; that he was given fair warning first to rectify it; then that the county board of health, having full power by law to abate nuisances and to appoint such agencies as it saw proper, had declared said property to be a nuisance and ordered the defendant to abate it. The plaintiff was again given fair notice of this action, and reasonable time to remove the offending property himself. Failing to do so, the city, having full power also by law to abate nuisances, through its marshal, without unnecessary damage, itself removes the cause of the nuisance; and the plaintiff sits listlessly by and makes no effort to look after or care for his property. Under these circumstances, if true, and they are undenied, the defendant city was not liable in law for any damages that necessarily resulted to the plaintiff in the removal or abatement of property that was *in fact* a nuisance. The verdict of the jury was, therefore, clearly contrary to the evidence and to the law of the case, and the defendant's motion for a new trial should have been granted.

The power conferred, in general terms, on municipal corporations to *prevent* and *abate* nuisances, can not be taken to authorize the condemnation and destruction of that as a nuisance which, in its nature, situation, or use, is not such *in fact*. And if the city, acting under the general power, abate that as a nuisance

that is *not such in fact*, it does so at its peril, and is liable for the damage done, if it turns out in proof that it has made a mistake. 1 Dillon on Municipal Corporations (4th ed.), Section 374; Yates vs. Milwaukee, 10 Wall., 497; Everett vs. Council Bluffs, 46 Iowa, 66; Wood's Law of Nuisances, Section 744.

On the other hand, if the city, under this general power, is proceeding against that as a nuisance which is *in fact* such because of its nature, situation, or use, it is then under the obligation to exercise the power of abatement in a reasonable manner so as to do the least injury to private rights. And if, where the *fact* of nuisance is clear, it exercises the power of abatement in an unreasonable, careless or negligent manner so as to produce unnecessary damage to private rights, it will be liable for the damage caused by such negligence. State vs. Newark, 5 Vroom (34 N. J. L.), 264; 1 Dillon on Mun. Corp., Section 378; Larson vs. Furlong, 50 Wis., 681; Wood's Law of Nuisances, Section 741.

But if, as is shown by the uncontradicted proofs in this case, the fact of nuisance is clear, and the owner thereof is notified that he must remove same, and is given a reasonable time in which to do so, and he fails, and the city, acting under its general power, or as the agent of the county board of health who have the same power, then remove or abate the same in such manner as not to bring about any *unnecessary* damage to the owner, then under the law the city is not liable.

The judgment appealed from is reversed, and a new trial ordered.