No. 82,433

STATE OF KANSAS, *Appellant*, v. RICHARD CARL DEINES, *Appellee*.

(997 P.2d 705)

Opinion filed January 28, 2000.

*Thomas J. Drees*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellant.

*Bernard T. Giefer*, of Shepherd & Giefer, of WaKeeney, argued the cause, and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The State appeals the district court's dismissal of two counts of criminal damage to property against a defendant who

mowed abutting landowners' wheat planted on a low maintenance county road. The district court found that wheat growing on a public road was an obstruction on the public right-of-way.

Richard Carl Deines was charged with two counts of misdemeanor criminal damage to property. The State's complaint alleged that Deines damaged the wheat fields of Leary Johnson and Robert Hafliger, landowners whose properties abutted a county road right-of-way. The damage resulted when Deines, without authorization from the owners of the wheat or the county, mowed the road right-of-way to clear wheat that had been planted by Johnson and Hafliger.

Prior to trial, Deines moved to dismiss the case. Deines asserted that because all the wheat mowed was within the county road right-of-way, the wheat was an unlawful obstruction upon the right-of-way; therefore, the mowing of the wheat was a lawful act.

In a memorandum decision, the district judge noted that an essential element of the crime of criminal damage is that another person have a property interest in the property damaged. The judge found that an individual does not have a property interest in a crop grown on a public right-of-way; a growing crop upon a public right-of-way is a purpresture, *i.e.*, an encroachment upon public rights, an illegal easement by appropriation to private use of that which belongs to the public, and a nuisance per se. The judge concluded as a matter of law that Deines' mowing of another's wheat growing upon the public right-of-way did not constitute the crime of criminal damage to property and dismissed the charges. The State appealed pursuant to K.S.A. 22-3602(b)(1).

Counties are granted the same right to self-rule under K.S.A. 19-101a that cities enjoy under the Kansas Constitution. The State asserts that counties are entitled to regulate what obstructions may be placed in public streets and roadways within the county. The State contends that Trego County (County) exercised its police powers and by an informal agreement allowed abutting landowners to plant crops on the right-of-way so the County would not be required to maintain certain "low maintenance" roads. The State argues the County's use of its police power to maintain public roads in this manner was granted by the legislature when the legislature

granted counties self-rule. Without citing any authority, the State argues that obstructions such as growing wheat upon the road may be permitted by the County; therefore, the district court acted outside of its authority when determining that the County could not under an informal agreement permit planting of wheat by the abutting landowners upon the county road right-of-way.

The State asserts the County's use of its police power to allow the planting of wheat in the right-of-way met the requirements set forth in *Stauber v. City of Elwood*, 3 Kan. App. 2d 341, 594 P.2d 1115 *rev. denied* 226 Kan. 793 (1979). In *Stauber*, the City of Elwood, Kansas, granted permits for private individuals or private corporations to erect signs on public streets. The *Stauber* court observed that before a city may authorize the use of the public right-of-way for private purposes there must be a clear showing that the primary use of the right-of-way will benefit the public and any private use must be incidental to the public purpose. Such private use need not be prohibited merely because private persons might derive monetary or other benefits therefrom. 3 Kan. App. 2d at 346. The *Stauber* court concluded even though the private signs gave directions to the public traveling upon the public roads, permitting private parties to erect advertising signs on public property was not a proper exercise of police power by a city.

Specifically, the State asserts that the County's primary purpose in allowing the planting of wheat on the right-of-way was to maintain the roadway for public use. The State concludes that if it were not for the agreement between the County and the abutting landowners, 64 miles of the County's "low maintenance" roads would be overgrown with wild vegetation and would be impassible. The State asserts if the district court's ruling is correct, the County will be required to maintain the 64 miles of "low maintenance" roads.

The issue dispositive of this criminal case is whether it is a defense to a charge of criminal damage to property that the property of another which is claimed to have been damaged was an obstruction upon a public right-of-way. The issue is a question of law. An appellate court's standard of review on questions of law is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

## REMOVAL OF AN OBSTRUCTION ON A PUBLIC RIGHT-OF-WAY

The case law in this area dates back to the late 1800's, and most of the law is derived from civil actions for damages brought by owners of land abutting public roads. In *Williams v. Fink*, 18 Wis. 265 (1864), the Wisconsin Supreme Court considered a trespass to the close. In that case, the defendant's threshing machine was stuck in the public road and obstructed traffic. The defendant took down his neighbor's fence to allow a team to pass upon the neighbor's land. The team drove across the neighbor's enclosed field and caused damage to the crops. The landowner sued the defendant for the damage to the crops. The defendant claimed:

> "[W]hen a highway is unlawfully obstructed, any person who wants to use it [the public road] may remove the obstruction, and may even enter upon the land of the party erecting or continuing the obstruction, for the purpose of removing it, doing as little damage as possible." 18 Wis. at 267.

The Wisconsin court acknowledged and approved the asserted general principle of law. It then held that the defendant could not escape liability based upon the principle because the defendant's own threshing machine blocked the highway and created the impasse which necessitated the removal of the fence for the passing team.

In *Larson v. Furlong*, 50 Wis. 681, 8 N.W. 1 (1881), the Wisconsin court considered whether the defendant had the right to remove a dock constructed by the plaintiff in a harbor. The defendant not only removed the dock, the defendant also converted the plaintiff's construction materials to his own use. The court held that a private individual has no right to abate a nuisance unless the nuisance obstructs his individual right. The court further stated that the right to abate a private nuisance is limited to the mere abatement of the nuisance. 50 Wis. at 690. The court stated:

> "The property of a man does not become outlawed because he may have placed it where it becomes a public or a private nuisance. If he has so placed his property that it becomes a private nuisance, he subjects it to the hazard of being injured by the aggrieved party to the extent necessary to remove the nuisance; but he does not thereby authorize the person injured to convert the property to his own use. If an individual should leave his wagon or other farming implements in the

highway, or should pile his wood within its bounds, so that they become an obstruction to travel thereon, any one hindered or obstructed in traveling such highway might lawfully remove them out of the highway; but we think he would not be justified in taking them away and converting them to his own use. So, if the owner of a boat or raft of logs should anchor them in a navigable river, so as to obstruct the passage of other boats or rafts, the owners of such other boats would have the right to remove the obstructing boats or rafts, so as to enable them to navigate the river with their own, but they would not be justified in taking possession of the obstructing boat or raft and converting it to their own use." 50 Wis. at 690-91.

A few years later, the Wisconsin court revisited the issue in *Godsell v. Fleming*, 59 Wis. 52, 17 N.W. 679 (1883). In that case, the plaintiffs erected a shed which encroached upon the public highway but did not interfere with the use of the highway by the public. The shed was constructed to house the plaintiffs' horses while the plaintiffs attended church services. In constructing the shed, the plaintiffs tore down a hitching post which had been set by the defendant to tether his horse during services. The defendant then tore down that part of the plaintiffs' shed which stood within the highway limits. The plaintiffs brought an action for damages. The trial court granted nonsuit for the defendant because the plaintiffs' shed had been constructed in the right-of-way. The plaintiffs appealed.

The Wisconsin court, relying on *Larson*, found that a private individual has no right to abate a public nuisance unless the nuisance obstructs his individual right. 59 Wis. at 53. The court observed: "The shed in question was scarcely a public nuisance, because it did not impede or incommode the lawful use of the highway by the public. It was rather a mere encroachment upon the right of way, as distinguished from an obstruction of the way, which is a nuisance." 59 Wis. at 53. Therefore, the court found that the nonsuit was erroneous and reversed the trial court.

### Kansas Cases

In 1874 in a Kansas civil trespass case, *Willis v. Sproule*, 13 Kan. 257 (1874), the defendants cited the Wisconsin case, *Williams v. Fink*, to support their position that they were not liable in trespass for removing the plaintiff's fence which crossed a public road and

obstructed traffic. Relying on *Williams*, the defendant argued that "[a]ny person who wishes to use a highway which is unlawfully obstructed, may remove such obstruction whether he be an officer or not." 13 Kan. at 263. The *Willis* court agreed, holding the defendant's "act done was the removal of an obstruction from a road so that the road could be traveled, and this any person had a right to do whether he was an officer or not." 13 Kan. at 268.

*State v. Stark*, 63 Kan. 529, 66 Pac. 243 (1901), applied civil nuisance law to a criminal charge. In that case, Stark was charged with malicious trespass of a saloon. Stark, with Carrie Nation and others, broke open the door and windows of a building to destroy intoxicating liquors. When charged, Stark asserted that his actions were justified because intoxicating liquors inside the building had been declared a public nuisance. The court quoted a Massachusetts case, *Brown v. Perkins and wife*, 12 Gray 89, where Chief Justice Shaw had stated:

" 'It is not lawful by the common law for any and all persons to abate a common nuisance, merely because it is a common nuisance, though the doctrine may have been sometimes stated in terms so general as to give countenance to this supposition. This right and power is never entrusted to individuals in general, without process of law, by way of vindicating the public right, but solely for the relief of a party whose right is obstructed by such nuisance.' (Page 101.)

" 'The true theory of abatement of nuisance is that an individual citizen may abate a private nuisance injurious to him, when he could also bring an action; and also, when a common nuisance obstructs his individual right, he may remove it to enable him to enjoy that right, and he cannot be called in question for so doing. As in the case of the obstruction across a highway, and an unauthorized bridge across a navigable watercourse, if he has occasion to use it, he may remove it by way of abatement. But this would not justify strangers, being inhabitants of other parts of the commonwealth, having no such occasion to use it, to do the same. Some of the earlier cases, perhaps, in laying down the general proposition that private subjects may abate a common nuisance, did not expressly mark this distinction; but we think, upon the authority of modern cases, where the distinctions are more accurately made, and upon principle, this is the true rule of law.' (Pages 101, 102.)

" 'The keeping of a building for the sale of intoxicating liquors, if a nuisance at all, is exclusively a common nuisance; and the fact that the husbands, wives, children or servants of any person do frequent such a place and get intoxicating liquor there does not make it a special nuisance or injury to their private rights, so as to authorize and justify such persons in breaking into the shop or building

where it is thus sold, and destroying the liquor there found, and the vessels in which it may be kept; but it can only be prosecuted as a public or common nuisance in the mode prescribed by law.' (Page 102)" 63 Kan. at 535-36.

The *Stark* court found that Chief Justice Shaw's holding in *Brown* was consistent with text authorities on the subject. In concluding that Stark had acted outside the law in breaking down the door and windows of the building to destroy intoxicating liquors, the court noted: "A fence across a public road is a common nuisance which a person journeying along the highway may legally abate by removing the obstruction. This is so because his progress is impeded and particular injury is sustained by him not shared in by the community generally." 63 Kan. at 536.

## Duty of the County

In arguing its criminal action against the defendant, the State asserted the County by an informal agreement exercised its police power by allowing abutting landowners to maintain public roads. Does the County have authority to informally designate abutting landowners authority to maintain low maintenance county roads?

We note that it is the statutory "duty of the board of county commissioners of each county to maintain its county roads only along the true course of any such road, as originally laid out or subsequently officially altered, and, when necessary, to cause the county surveyor to take such corrective action as may be necessary to maintain the true course of the road, keep the same in repair, and remove or cause to be removed all obstacles that may be found therein." *Gronniger v. Board of Doniphan County Comm'rs*, 6 Kan. App. 2d 642, 645, 631 P.2d 1252, *rev. denied* 230 Kan. 817 (1981).

The road surveyor employed by Trego County to survey the right-of-way testified that although there was sufficient room for two vehicles to pass in the uncultivated areas of the road, the wheat cultivation south of the road came up to and at places crossed the center line of the road, and cultivation north of the road came to and at places crossed the center line of the road. We note that by statute, the county engineer or township trustee is charged with maintaining the true course of a county road and "shall keep the

same in repair, and remove or cause to be removed all obstructions that may be found therein." K.S.A. 1998 Supp. 68-115(a).

In fulfilling the duty to maintain the true course of a county·road and to repair and remove or cause to be removed *all obstructions* upon that county road, the county engineer is the "agent of the board of county commissioners." *Gronniger,* 6 Kan. App. 2d at 644. The County has no statutory authority to informally designate others as its agent to maintain county roads.

## PUBLIC NUISANCE PER SE

A public nuisance is an unreasonable interference with a right common to the general public, such as a condition dangerous to health, offensive to community moral standards, or unlawfully obstructing the public in the free use of public property. Black's Law Dictionary 1095 (7th ed. 1999).

Relying on *Eble v. State,* 77 Kan. 179, 93 Pac. 803 (1908), and *City of Emporia v. Humphrey,* 132 Kan. 682, 297 Pac. 712 (1931), the district judge found that the wheat growing on the road was a nuisance per se, justifying Deines' removal of the wheat by way of abatement. Where the trial court has made findings of fact and conclusions of law, the appellate court's review is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence possesses both relevance and substance and furnishes a substantial basis of fact from which the issues can reasonably be resolved. Substantial evidence is legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *State·v. Haskins,* 262 Kan. 728, 731, 942 P.2d 16 (1997).

In *Eble,* this court found that a private individual could not obtain title to a public highway by adverse possession. In that context, it was stated that an obstruction to the public use of a highway is a continuing nuisance and that no equities in favor of a person committing such a nuisance can be founded upon the acquiescence of the highway or other officials. 77 Kan. at 179, Syl. ¶ 4. The *Humphrey* court found that the city has authority and a duty to abate· an encroachment on a street. A permanent encroachment

on a public street for a private purpose constitutes a nuisance per se and a purpresture. 132 Kan 682, Syl. ¶ 2.

The State contends that the home rule powers informally exercised by Trego County were pursuant to its police powers. Police powers are generally defined as those which are to protect the health, safety, or welfare of the public. See *e.g. State ex rel Schneider v. Ligett*, 223 Kan. 610, 615, 576 P.2d 221 (1978).

*Eble* and *Humphrey* state that it is the duty of the government to remove encroachments or obstructions by abatement. The issue here is whether a *private individual* who abates an obstruction or encroachment upon a public right-of-way may be convicted of criminal damage to property.

Clearly, Kansas case law dating back to the late 1800's establishes a well-articulated principle of law that where there is an obstruction across a public right-of-way which obstructs the travel of an individual, the obstruction is a nuisance per se, and the affected individual may remove the obstruction by way of abatement. The district judge found that wheat growing in the public right-of-way was an obstruction and a nuisance per se. The judge concluded as a matter of law that Deines' mowing of another's wheat growing upon the public right-of-way did not constitute the crime of criminal damage to property. Under these circumstances, the trial court did not err in dismissing the State's criminal action against Deines.

Affirmed.