(858 P.2d 1240)
No. 69,094

In the Matter of the Marriage of GREGORY LANE HANSEN, *Appellant,* and CONNIE SUE MASTERS, *Appellee.*

Opinion filed August 27, 1993.

*Don W. Riley,* of Wichita, for the appellant.

*William A. Hensley,* of Wichita, for the appellee.

Before BRISCOE, C.J., LARSON and GERNON, JJ.

BRISCOE, C.J.: Gregory Lane Hansen appeals an order increasing his child support obligation, arguing the district court applied the wrong child support schedule. Connie Sue Masters contends Hansen failed to timely appeal.

Hansen and Masters were married in December 1974 and had two children. When they were divorced in 1984, Hansen was granted primary/physical custody of both children. In February 1987, Masters was given primary/physical custody of one of the children.

On September 11, 1992, Masters filed a motion for an increase in child support, which was granted. Hansen filed a motion for rehearing, which was denied. He then filed a second motion for rehearing, which was also denied.

I. Timeliness of Appeal.

Masters argues Hansen failed to file his appeal within 30 days of the order granting her motion to increase child support. Generally, an appeal must be filed within 30 days from "entry of the judgment." K.S.A. 1992 Supp. 60-2103(a). Judgment is effective only when a journal entry or judgment form is signed by the judge and filed with the clerk of the district court. K.S.A. 60-258; *In re Marriage of Wilson*, 245 Kan. 178, 180, 777 P.2d 773 (1989).

The chronology of pleadings and rulings in this case is as follows:

9/11/92 Motion to increase child support;

9/23/92 Order and worksheet regarding support motion;

9/30/92 Motion for rehearing;

10/15/92 Record of hearing/entry of judgment (minute sheet) on rehearing motion (dated 10/13/92); "Judgment is entered as set forth in disposition";

10/15/92 Order nunc pro tunc;

10/19/92 Journal entry filed on rehearing motion;

10/29/92 Second motion for rehearing;

11/25/92 Record of hearing/entry of judgment (minute sheet) on rehearing motion (future complaints must be appealed) (dated 11/24/92);

12/15/92 Journal entry on second motion for rehearing;

12/18/92 Notice of appeal filed.

Post-trial motions that toll the time for appeal are: motion for judgment notwithstanding the verdict (K.S.A. 1992 Supp. 60-250[c]); motion to amend or make additional findings of fact (K.S.A. 60-252[b]); motion for new trial (K.S.A. 60-259[b]); and motion to alter or amend the judgment (K.S.A. 60-259[f]). See K.S.A. 1992 Supp. 60-2103(a).

Masters argues that Hansen's motions for rehearing are not motions which toll the time for appeal. Hansen's motions clearly are not motions for judgment notwithstanding the verdict or motions for new trial. Likewise, since there was no trial, the motions are not 60-252(b) motions to amend or make additional findings of fact. The question becomes whether the motions for rehearing are, in substance, 60-259(f) motions to alter or amend the judg-

ment. Motions to alter or amend must be filed within 10 days of entry of judgment. K.S.A. 60-259(f).

"The purpose of K.S.A. 60-259(f) is to allow the trial judge the opportunity to correct prior errors." *Denno v. Denno*, 12 Kan. App. 2d 499, 501, 749 P.2d 46 (1988). Motions not titled "motion to alter or amend" have often been treated as 60-259(f) motions. In *Honeycutt v. City of Wichita*, 251 Kan. 451, 460, 836 P.2d 1128 (1992), a motion for reconsideration was treated as a motion to alter or amend judgment, which tolled the time for appeal. In *Denno*, a motion for rehearing was treated as a 60-259(f) motion to alter or amend:

"While a motion for rehearing is not one of the motions expressly designated in K.S.A. 60-2103(a), the husband's motion in the present case stated specifically the alleged errors of the district court and the grounds he relied upon in challenging those errors. Looking through form to substance, we think the husband sought by his motion to alter or amend the judgment pursuant to K.S.A. 60-259(f)." 12 Kan. App. 2d at 501.

See *Caplinger v. Carter*, 9 Kan. App. 2d 287, Syl. ¶ 1, 676 P.2d 1300, *rev. denied* 235 Kan 1041 (1984). Both *Denno* and *Caplinger* relied on *Ten Eyck v. Harp*, 197 Kan. 529, 419 P.2d 922 (1966), where the court treated a motion for rehearing as a 60-259(f) motion because the "motion stated specifically the alleged error of the district court and the grounds relied upon." 197 Kan. at 533.

Here, the first motion effectively alleged the court had misinterpreted the guidelines and sought reconsideration of the court's prior order. When the rationale followed by the court in *Ten Eyck* is applied here, Hansen's first motion was a 60-259(f) motion to alter or amend. The second motion basically sought rehearing of the previous motion on the same grounds and is also properly treated as a motion to alter or amend.

By treating the first rehearing motion as a 60-259(f) motion, the time for appeal of the September 23, 1992, order increasing child support was tolled until October 19, 1992, when the order denying the motion for rehearing was filed. A question remains whether a party can ask a court to alter or amend its order regarding a previous motion to alter or amend. We find no authority upon which to base a conclusion that a party is precluded from filing redundant motions. See *L. R. Foy Constr. Co. v.*

*Professional Mechanical Contractors,* 13 Kan. App. 2d 188, 193, 766 P.2d 196 (1988). While other consequences may arise as a result of the filing of a redundant motion, such as the imposition of sanctions, we find no procedural rule which prohibits the filing of the motion itself.

Even if the second motion is treated as a 60-259(f) motion, it does not toll the time to appeal from the order increasing support because it was not filed within 10 days of that order. Therefore, because the first rehearing motion was denied on October 19, and the notice of appeal was filed on December 18, there was not a timely appeal from the original order increasing support. However, Hansen also appealed from the orders denying the motions for rehearing. Because his second motion for rehearing was filed within 10 days of the denial of the first rehearing motion, and the notice of appeal was filed within 30 days of denial of the second motion, Hansen's appeal of the orders denying the rehearing motions is timely.

II. Interpretation and Application of Child Support Guidelines.

To address the merits of the appeal from the orders which denied rehearing, the substance of the underlying order increasing child support must be examined. Hansen contends the court applied the wrong guideline schedule when it computed child support in the present case. See 1992 Kansas Child Support Guidelines, 1992 Kan. Ct. R. Annot. 68. He argues a proper reading of the guidelines requires that, where there is divided custody of two children, the court must use the two-child schedule when computing the worksheet for each parent. See 1992 Kan. Ct. R. Annot. 91. He contends the court erred in the present case when it used the one-child schedule.

To support his contention, Hansen relies upon the language contained in the general instructions for preparing the child support worksheet, section D, "Application in Divided Custody Situations":

"For Divided Custody, if each parent has residential custody of one or more children, *a Worksheet should be prepared for each family unit using the Child Support Schedule which corresponds with the total number of children of the parties to the litigation living in the family units.* If the parties' children are covered by the same health insurance policy, the cost should be prorated based upon the number of children in each family unit.

Upon completion of the two Worksheets, the lower Net Parental Child Support Obligation is subtracted from the higher amount. The difference is the amount of child support the party having the higher obligation will pay to the party with the lower obligation." (Emphasis added.) 1992 Kan. Ct. R. Annot. 72-73.

The issue Hansen presents requires interpretation of the guidelines and, like interpretation of a statute, it is a question of law. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). An appellate court's review of questions of law is unlimited. *In re Marriage of Sedbrook*, 16 Kan. App. 2d 668, 676, 827 P.2d 1222, *rev., denied* 251 Kan. 938 (1992).

Hansen argues a plain reading of section D required the court to use the two-child schedule in this divided custody case where each parent has custody of one child. We agree. By its language, section D requires use of the child support schedule "which corresponds to the *total number of children of the parties to the litigation living in the family units*." (Emphasis added.) We find significant the use of the words "total" when referring to the number of children of the parties to the litigation, and the use of the plural of "units" when referring to the family units to be considered when totaling the number of children. The total number of children of the parties to the litigation living in the family units in the present case is two; therefore, the two-child schedule is applicable.

This interpretation of section D is consistent with the specific instructions contained in the guidelines for computation of child support. We note that, where one party has custody of all of the parties' children, the proper schedule to use to determine the "Basic Child Support Obligation" is the one "that corresponds to the total number of children for whom the parents share responsibility." See 1992 Kan. Ct. R. Annot. 75. From this language and the examples which follow, it is clear that, if either party in the present case had custody of both children, the two-child schedule would be applicable.

Masters does not challenge Hansen's interpretation of section D on its merits. Instead, Masters emphasizes the 1992 addition of Example 4. Example 4 interprets a divided custody situation and expressly provides that a two-child family with divided cus-

tody should use the one-child schedule. 1992 Kan. Ct. R. Annot. 76. Example 4 states:

"The Petitioner in the above example has custody of the older child, six years and seven months. The Respondent has custody of the younger child, three years and ten months. *The Child Support Schedule for 'One-Child Families' should be used for calculating the support for each household.* At $2,600 combined income of the parties, the worksheet for the Petitioner to pay support to the Respondent would show $323 at Line D.3. The worksheet for the Respondent's obligation for the older child would show $378 at Line D.3. Without considering any other factors besides income in this example and after the remaining calculations are carried through, the Petitioner would pay the Respondent $220 for the younger child. The Respondent would pay the Petitioner $121 for the older child. The net result is that the Petitioner would pay the Respondent $99 per month." (Emphasis added.)

Hansen argues the other new example added in 1992, Example 5, more accurately illustrates the clear intent of the language in section D. Example 5 states:

"This second example depicts a combined divided custody situation in which one of the parties has a subsequent child. Using the facts of Example 4 for this example, the Petitioner now has a subsequent child in addition to the older child of this support case. The Child Support Schedule for 'Three-Child Families' should be used for calculating the support for each household. At $2,600 combined income of the parties the worksheet for the Petitioner to pay support to the Respondent would show $222 at Line D.3. The worksheet for the Respondent's obligation for the older child would show $260 at Line D.3. After the remaining calculations are carried through, the Petitioner would pay the Respondent $151 for the younger child. The Respondent would pay the Petitioner $83 for the older child. The net result is that the Petitioner would pay the Respondent $68 per month." 1992 Kan. Ct. R. Annot. 76-77.

Hansen argues that Example 4 of the guidelines is inconsistent with section D and should be disregarded. Masters argues that Example 4 cannot be disregarded because it is as much a part of the 1992 guidelines as section D. See 251 Kan. viii (adv. sht. No. 2) (adopting Administrative Order No. 83, including guidelines and examples, superseding 1990-91 guidelines).

Section E is the next general instruction following section D and addresses the multiple-family adjustment. A review of section E is helpful in determining the intent of section D and in better understanding Example 5. Section E of the general instructions for preparing the worksheet states: "For the Multiple-Family Ad-

justment, if the noncustodial parent has children by another relationship who reside with him/her, *the Child Support Schedule representing the total number of children that the noncustodial parent is obligated to support shall be used in determining the basic support obligation.*" 1992 Kan. Ct. R. Annot. 73. Example 5 illustrates a combination of sections D and E by addressing both divided custody and a multiple-family adjustment. Examples 4 and 5 appear inconsistent. Throughout the instructions, emphasis is given to consideration of the total number of children a parent is obligated to support. If that philosophy were followed in Example 4, the example should have required use of the schedule for two-child families.

Reversed and remanded for further proceedings.