(10 P.3d 42)

No. 84,271

In the Matter of the Marriage of DEBORA S. GORDON-HANKS, *Appellant,* and RICKY HANKS, *Appellee.*

Opinion filed August 25, 2000.

*Ronald W. Nelson* and *Joseph W. Booth,* of Rose & Nelson, of Overland Park, for appellant.

*Janet L. Damore,* of Schlagel, Damore & Gordon, LLC, of Olathe, for appellee.

Before BRAZIL, C.J., ELLIOTT, J., and PADDOCK, S.J.

BRAZIL, C.J.: Debora Gordon-Hanks appeals the order of the district court changing the residential care and custody of her two sons from her to her former husband, Ricky Hanks. She raises several issues involving the case manager appointed by the trial court pursuant to K.S.A. 1999 Supp. 23-1001 *et seq.*

We affirm.

Debora Gordon-Hanks and Ricky Hanks were divorced in Sedgwick County, Kansas, on June 6, 1990. The decree of divorce granted the parties joint custody of their two sons, with residential placement with Debora. The parties have squabbled over visitation, child support, and other minor issues ever since.

This case arose following the relocation of both parties to Johnson County and their ongoing inability to resolve their differences. While the parties lived in Sedgwick County, they were involved in

court-ordered dispute resolution counseling. When both parties moved to Johnson County, a new counselor was appointed. After a rocky start, the parties participated in counseling with the counselor, but the counselor was unable to get them to resolve their differences and recommended case management. By agreement of both parties, the case was transferred to the Johnson County District Court, which ordered case management pursuant to K.S.A. 23-1001 *et seq.* Diane Lund was appointed case manager.

When Lund was unable to get the parties to settle their disputes, she recommended to the court that residential custody of the children be changed from Debora to Rick.

After hearing the evidence and arguments of counsel, the court found that it would be in the children's best interests for residential custody to be transferred to their father.

Debora first argues that the trial court erred in addressing the matter of a change of residency because no party to the dispute filed a motion to do so. This is a challenge to the jurisdiction of the court. Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *State v. Snelling*, 266 Kan. 986, 988, 975 P.2d 259 (1999).

The heart of Debora's argument is that neither party presented a motion to the court raising this issue, and, therefore, the trial court had no jurisdiction. However, her argument is both factually and legally flawed.

Under K.S.A. 1999 Supp. 23-1003(d), the case manager is authorized to make recommendations to the court. The statute specifically includes recommendations concerning issues such as primary residence of children. K.S.A. 1999 Supp. 23-1003(d)(5). When the case manager makes such recommendations, the court may adopt them as orders of the court. K.S.A. 1999 Supp. 23-1003(d)(1). A motion by one of the parties is not required, nor is a hearing required unless a party opposes the recommendation. In that case, it is the party in opposition that must make the motion for review. K.S.A. 1999 Supp. 23-1003(d)(6).

Technically, under the statute, if there was to be a hearing at all, it would have had to have been on Debora's motion. The fact that Debora challenged the recommendation and put on evidence in

opposition shows that Debora implicitly, if not explicitly, made such a motion. Otherwise, the recommendation could have been adopted by the court without any hearing.

Debora also argues that the case manager acted beyond her statutory authority and the trial court erred by allowing her to do so. Debora contends that this is a question of whether the court and case manager followed the proper legal procedures, an issue of law, and that appellate review is de novo.

In support of her position, Debora cites *Santaniello v. Santaniello*, 18 Kan. App. 2d 112, 114, 850 P.2d 269 (1992), and *In re Marriage of Glenn*, 18 Kan App. 2d 603, 856 P.2d 1348, *rev. denied* 253 Kan. 603 (1993). Her reliance on these cases, however, is misplaced. *Santaniello* was decided under a substantial competent evidence standard. 18 Kan. App. 2d at 112. The trial court was reversed because it failed to make required findings and state specific facts on the record. 18 Kan. App. 2d at 115. *Glenn* involved a violation of due process, an issue of constitutional concern giving rise to a de novo standard, but wholly distinguishable from this case which simply concerns the proper exercise of statutory authority. In her reply brief, Debora cites two other cases for support—*Scruggs v. Chandlee*, 20 Kan. App. 2d 956, 894 P.2d 239 (1995), and *In re Marriage of Hansen*, 18 Kan. App. 2d 712, 858 P.2d 1240 (1993). Both of these cases involved the interpretation of child support guidelines. However, this case does not require statutory interpretation, only a determination of whether the case manager and court acted within their lawful discretion. Therefore, *Scruggs* and *Hansen* are not on point. The proper standard of review is abuse of discretion.

While the statutory scheme charges the case manager with a variety of duties, it leaves the method and timing of carrying out those duties to the discretion of the case manager and the court. Debora's complaints involve the manner in which the case manager handled the case, the case manager's decision to make recommendations to the court, and the court's oversight of the case manager. In other words, despite her argument in favor of a de novo standard, Debora alleges that the case manager and court abused their discretion. Discretion is abused only when it is arbitrary, fanciful,

or unreasonable. *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998).

Debora argues that the case manager improperly "took over" the case. She complains that the case manager addressed issues not raised by the parties and made recommendations without authorization of the parties. Her position is that the case manager has no authority to raise issues, make recommendations, or do anything without the approval of at least one of the parties. However, her position ignores the discretion plainly given the case manager by statute.

K.S.A. 1999 Supp. 23-1001 provides that a court may appoint a case manager to assist the parties in making a plan for child custody or visitation. The case manager is not a mediator. The statute specifically states that its purpose is to provide a procedure "other than mediation." K.S.A. 1999 Supp. 23-1001. Moreover, if the case manager's efforts fail to bring the parties to an agreement, "the case manager *shall* make recommendations to the court." (Emphasis added.) K.S.A. 1999 Supp. 23-1001.

K.S.A. 1999 Supp. 23-1003(a) outlines the duties and powers of a case manager. The statute does not state how the case manager is to go about accomplishing the task of assisting the parties in resolving their disputes. The case manager is not restricted to a particular method or procedure. There is nothing in the statutes limiting the case manager's authority to addressing only issues presented to him or her by the parties, as Debora suggests. Nor is there any requirement that the case manager have the approval of one of the parties before submitting a recommendation to the court. On the contrary, the statute contemplates the possibility that the parties will adopt uncompromising positions, and therefore the case manager has the authority to act on his or her own and make recommendations to the court. In fact, the case manager is directed to do so in such situations. K.S.A. 1999 Supp. 23-1001. The determination of when an impasse has been reached and when it is necessary to make a recommendation to the court is left entirely to the discretion of the case manager.

Of course, the case manager cannot arbitrarily make recommendations to the court. He or she must first attempt to work with the

parties and must have some basis for making any recommendation. In this case, the case manager spelled out the basis for her recommendation in her report submitted to the court.

She also noted in the earlier portion of her report that despite the recommendations of previous mediators, psychological consultants, and therapists in favor of increasing the amount of contact between Ricky Hanks and the boys, "Deborah [sic] Hanks continues to refuse to agree." The case manager had worked on the case for 7 months. Her position that the parties had reached an impasse was bolstered at the hearing by the testimony of Ricky Hanks, who stated that the conflict between him and his wife had gotten worse since case management had started. Taken collectively, the evidence is not indicative of arbitrary or unreasonable action by the case manager.

The trial court, after hearing the evidence, determined that the case manager acted appropriately. Based on the case manager's report and the other evidence presented, the trial court found it to be in the children's best interests to adopt the case manager's recommendations as the order of the court. The court's decisions were neither arbitrary, nor fanciful, nor unreasonable, but were based on evidence presented and arguments of counsel and were well within the court's lawful authority.

Closely related with the previous issue is Debora's contention that the trial court should have removed the case manager because she was neither neutral nor objective. K.S.A. 1999 Supp. 23-1003(c) provides that "[a] disputant party may request reassignment of a case manager by filing a motion with the court. The court shall consider such requests upon review." Debora's counsel orally moved for the removal of Lund as case manager at the close of the hearing. Counsel for the boys joined in this motion. The decision to grant or deny such a motion is clearly committed to the discretion of the court and ought not to be overruled absent evidence of abuse of discretion. *Saucedo v. Winger*, 252 Kan. 718, 729-30, 850 P.2d 908 (1993) (citing *State v. Foren*, 78 Kan. 654, 658-59, 97 Pac. 791 [1908]).

Debora presented very little evidence to support her motion to remove the case manager. She testified about a confrontation be-

tween her and the case manager. Her counsel argued in closing that case management was not working well and pointed out that Ricky testified the conflict between them had gotten worse since case management began. He also argued the case manager had gone beyond the mandate of the statute. Counsel for the boys also advised the court the boys wanted the case manager removed because they felt she was unfair to Debora.

In response to the motion, the trial court stated: "I have found no competent, probative evidence of anything that justifies replacement of the case manager other than the fact that one party doesn't agree with what the case manager recommends." The court did not agree that the case manager had exceeded her statutory authority, but rather noted: "The case manager is . . . supposed to take strong positions and that's what['s] being done here, and so she will not be replaced." The court gave no weight to the arguments of the boys' counsel, finding the position he advanced with regard to their opinions to be of dubious foundation and to have little merit.

In reviewing the record, there is little, if any, evidence supporting Debora's position. Her own testimony only indicates that she had a conflict with the case manager, and this by itself does not establish that the case manager had become biased to the point of losing objectivity. The testimony by Rick indicates the conflict between him and Debora increased during case management, but it does not reflect directly on the case manager in any way.

Debora's argument that the case manager exceeded her authority was (and still is) based on the erroneous position that the case manager is a "modified mediator." Debora argues the case management statutes "presumes that the responsibility of the case manager is first to try to mediate the dispute between the parties." She cites no authority for her argument and there is none. In fact, the statute plainly states that the case management process was designed to provide "a procedure, other than mediation." K.S.A. 1999 Supp. 23-1001. As already laid out above, the case manager is not a mediator and does have the authority to take independent action and make recommendations to the court at his or her discretion.

The trial court correctly found no merit in the arguments of counsel.

Given the lack of evidence showing undue bias on the part of the case manager and the erroneous premise of Debora's position regarding the authority of the case manager, the trial court did not abuse its discretion in denying the motion for removal.

Debora also contends that the trial court's decision is not supported by substantial competent evidence. In reviewing for substantial competent evidence, appellate courts examine the record for evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999) (citing *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 [1993]).

The trial court heard testimony from both parties as well as the school counselor. The court observed the witnesses' behavior and demeanor in the courtroom. The court received into evidence a copy of the younger boy's report card, a copy of a letter written by Dr. Sweetland, a psychologist, and a copy of a letter written to the case manager by the boys' counsel. The court also had a copy of the case manager's report. The court listened to the arguments of counsel and a brief statement by the case manager.

The court stated on the record that it found ample evidence indicating an unwillingness on the part of Debora to respect the bonds between the boys and Ricky and to allow them a continuing relationship. The court indicated that it was giving substantial weight to the recommendation of the case manager and to the opinion of Dr. Sweetland, who both were of the opinion that it was in the children's best interests to reside with their father.

Debora argues that "it is clear that the only basis on which the Court relied in making its final decision was that the case manager had recommended that change," and contends that is insufficient. Debora ignores the fact that the court also stated it was relying on "the opinion of a highly regarded psychologist, Dr. Sweetland." Debora also ignores the fact that the court heard testimony from three witnesses, including both parties. Debora focuses only on the

case manager's report and recommendation which she contends had no factual basis.

However, within the report, the case manager noted the basis for her recommendation. The case manager was present and could have been called by Debora to testify and explain her recommendation. Debora did not do so and in fact, never directly challenged the case manager's report.

The case manager's report and recommendation, the letter from Dr. Sweetland, as well as the testimony adduced at the hearing, constitute substantial competent evidence. The court's reasoning set forth on the record reflects both the court's assessment of the relative weight and credibility of the evidence and the court's consideration of the children's best interests. Contrary to Debora's contention, the record shows that the trial court's decision is grounded on substantial competent evidence.

Debora's final contention is that the trial court improperly placed the burden of proof on her. This is a question of law subject to unlimited appellate review. *State v. Deines*, 268 Kan. 432, 434, 997 P.2d 705 (2000).

The trial court stated it was not placing the burden of proof on anyone. However, in any situation where necessary facts and circumstances are contested, there is some burden of proof, as the court must have something on which to base its decision. In most situations, the burden lies with the moving party, although not always (for example, a motion to suppress).

In this situation, the court began with the recommendation of a third party appointed by the court, the case manager. Under the statute, if a case manager's recommendations are challenged, the case manager must explain his or her reasons by report or testimony. K.S.A. 1999 Supp. 23-1003(d)(6). No burden of proof is established by the statute. However, since the case manager is neither a party to the dispute, nor representative of a party, but is a court appointed official, the burden of proof would not logically lie with the case manager any more than the burden would lie with the court itself. The logical conclusion is that the disagreeing party bears the burden of proving the case manager's recommendation to be erroneous or inappropriate. This conclusion is buttressed by

the fact that a hearing on the case manager's recommendation is not automatic, but is held only if a party in disagreement files a motion for review with the court. K.S.A. 1999 Supp. 23-1003(d)(6). That being the case, the burden of proof at trial would have appropriately fallen on Debora.

Even though Ricky's counsel took the unnecessary step of orally moving the court to adopt the case manager's recommendation, that would not necessarily shift the burden to him as the moving party. First, the court could order the recommendations without any motion from the parties. Second, his motion could simply be viewed as the manifestation of acceptance of the recommendation by a disputant party. Third, the case manager's report could be viewed as prima facie evidence supporting his motion. No matter how one approaches the issue, the logical conclusion is that the burden is on the opposing party to prove the case manager's recommendation as erroneous or inappropriate, not on the case manager or concurring parties to prove the propriety of the recommendations.

Affirmed.