NOT DESIGNATED FOR PUBLICATION

No. 117,895

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
SHANE K. OWENS,
*Appellee*,

and

MONICA L. OWENS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed August 31, 2018. Reversed and remanded with directions.

*Stephen M. Turley* and *Jennifer A. Wagle*, of Wagle & Turley, LLC, of Wichita, for appellant.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

GREEN, J.: Shane K. Owens and Monica L. Owens divorced in 2010; they have two minor children. The trial court granted a joint custody order in which Monica was given residential custody and Shane was granted parenting time. After Shane disputed the joint custody agreement, the trial court ordered the parties to enter into the limited case management process. Using Local Rule 14, the Butler County District Court appointed Ronda Welsh as the limited case manager (LCM). Welsh recommended that it was in the best interests of the children to grant Shane residential custody. Monica objected to the recommendations. Following an evidentiary hearing, the trial court adopted Welsh's

1

recommendations. Monica appealed from the trial court's decision. On appeal Monica argued, in part, that Welsh was not qualified to make the recommendations to the trial court regarding the residency of the children. This court agreed and reversed and remanded after finding that Welsh was not a qualified LCM as required under K.S.A. 2014 Supp. 23-3508(d). *In re Marriage of Owens*, No. 113,026, 2015 WL 5750473, at *4-5 (Kan. App. 2015) (unpublished opinion).

On remand, the trial court again appointed Welsh to assist in the limited management process. This time Welsh was appointed as a limited parenting coordinator (LPC) under Local Rule 15. Monica moved this court to enforce its mandate and vacate the trial court's order granting Welsh's appointment. The motion was denied.

Welsh again recommended that Shane be granted primary residential custody. The trial court held that Monica had failed to prove that Welsh's recommendations were erroneous or inappropriate. The trial court also held that a change of residency was not in the best interests of the children.

Because the trial court erred in reappointing an unqualified LPC, we reverse the trial court's decision and remand this case to a different judge with directions to conduct a new evidentiary hearing in this matter.

Shane and Monica married in 2005 and have two children together. The parties divorced in 2010 and later reached an agreement resolving all custody, residency, parenting time, and child support issues involving the two minor children. The parties were granted joint legal custody with Monica receiving primary custody.

In March 2013, Shane filed several motions requesting a change in custody. The trial court ordered the parties to enter into limited case management. Welsh was assigned as the LCM; she was ordered to address the following issues: custody or residency,

2

parenting time, parenting issues, school enrollment for the 2013-2014 school year, and Monica's motion regarding a hair follicle test. The trial court also ordered both parties to participate in drug testing. On April 23, 2013, Monica tested positive for methamphetamine and amphetamine.

Because of the hair follicle drug test results, Shane was granted primary residential custody of the children; Monica was granted parenting time. The trial court clarified that this was a temporary order. The trial court noted: "The parties agree such arrangement shall continue until [Monica] has a negative hair follicle test for any illegal drugs and further orders are entered by the [c]ourt or agreement of the parties."

In December 2013, the LCM submitted her report with her recommendations to the trial court. The LCM recommended that the parents continue to have joint custody of the children and that Shane should continue to have primary residential custody of the children.

Monica filed a motion objecting to the LCM's report and recommendations. She also moved to disqualify the LCM. The trial court scheduled a hearing and ruled that the hearing should be conducted under the following standard: "[T]he Standard of Review as set forth in the *In re Marriage of Gordon-Hanks*[, 27 Kan. App. 2d 987, 10 P.3d 42, *rev. denied* 270 Kan. 898 (2000),] case, with the objecting party, Monica L. Owens, having the ability to thoroughly attack the credibility of the limited case manager, Ms. Welsh."

At the hearing, Monica questioned Welsh about her qualifications. She also questioned Welsh about her previous employment with Shane's counsel as a legal assistant; Monica also sought information regarding how this relationship might have affected Welsh's process. Welsh testified she did not recall notifying the parties about her previous employment. Monica asked Welsh about her process, including phone interviews with the witnesses, her note taking, her correspondence with the parties, and

3

her time frame for completing her report. Monica also asked Welsh about her consideration of the statutory factors regarding custody and her later recommendations.

Monica was the only other witness who testified at the August 27, 2014 hearing. Monica testified that she moved into her parents' home and that the children had their own separate bedrooms. She also testified about her experience with the LCM. She said she received a letter asking for immediate payment which was required to begin the process. She met with the LCM for the first time in June 2013. Monica was unaware at time of first meeting that the LCM had previously worked for Shane's attorney. Monica discussed her positive drug test results and her later negative drug test results. She testified that she provided her witness list to the LCM on two occasions. According to Monica, it was difficult to communicate with the LCM: the LCM failed to respond to Monica's texts, e-mails, and phone calls. Monica said she tried to provide the LCM with documentation regarding Shane's arrest and "pornographic pictures" of Shane and his girlfriend, which Monica stated that she found on their son's tablet. Monica stated that the LCM failed to consider this information. Monica testified that she believed she was not treated fairly.

The trial court held an opinion hearing on September 23, 2015. In its ruling, the trial court found: "[Monica] attacks the limited case manager's report and recommendations for the process taking too long a period of time." The trial court also addressed the "much dysfunctional activity on behalf of the litigants . . . . Typically, court proceedings would not be transpiring with the limited case manager proceeding, which did occur" here. The trial court noted the LCM "was subjected to extensive examination and cross-examination by the parties' respective counsel." The trial court then addressed the statutory factors considered in a determination of child custody, residency, and parenting time. Regarding these factors, the trial court found:

4

"The Court finds the limited case manager applied the factors, plural, in 10 different recommendations, not just to No. 2 regarding residency and parenting time.

"The Court finds the limited case manager applied the statutory factors to the multiple recommendations.

. . . .

"The Court finds the limited case manager's report to be thorough and well thought out with well-reasoned and appropriate recommendations.

"This Court does not set aside the recommendations of the limited case manager, but, rather, adopts the same for being well-founded for the reasons previously set forth."

Monica timely appealed the trial court's decision. Monica argued that the LCM was not qualified under K.S.A. 2014 Supp. 23-3508(d) and that the trial court, therefore, erred by adopting her recommendations. This court agreed and reversed the trial court's decision and remanded for a hearing consistent with its holding. We held the following:

"Considering the degree of responsibility the district court delegated to the LCM per Local Rule 14, the shifting of the burden of proof on Shane's motion from him to Monica as a result of the LCM's appointment and recommendations, the weight the district court placed on the LCM's recommendations, and the scarcity of findings made independently by the district court as to the ultimate issues, we find Shane has not met his burden to show that the district court's error in using an unqualified LCM was harmless." *In re Marriage of Owens*, 2015 WL 5750473, at *5.

In fact, we determined that Shane had failed to brief the issue of harmlessness altogether. 2015 WL 5750473, at *5.

Pending this court's decision, the Thirteenth Judicial District repealed Local Rule 14 and replaced it with Local Rule 15. This court was aware of the change when it made its decision in Monica's first appeal. This court, however, decided not to address Local Rule 15 in its first decision because the trial court originally appointed Welsh under Local Rule 14. 2015 WL 5750473, at *4.

5

On remand, the trial court reappointed Welsh to this case as an LPC under Local Rule 15. Under Local Rule 15, LPCs are qualified if they are (1) currently qualified as a case manager, see K.S.A. 2017 Supp. 23-3508; (2) currently approved as a mediator; or (3) "[h]ave sufficient training, resources and experience to undertake the case as determined by the judge making the appointment of a limited parenting coordinator." The trial court ruled that under the second and third provisions Welsh was qualified to act as an LPC.

Monica moved for a new judge, requesting that Judge Hart recuse himself from the case. The chief judge of the Thirteenth Judicial District ruled that the motion was insufficient. The chief judge held that although Judge Hart made an adverse ruling against Monica, she had failed to present sufficient grounds for Judge Hart's recusal.

On February 5, 2016, Monica moved this court to enforce its previous mandate. In addition, Monica asked this court to vacate the trial court's order appointing Welsh as an LPC and to disqualify her as the LPC in her case. This court denied Monica's motion on February 25, 2016.

Welsh submitted her LPC report on June 2, 2016, although the trial court had ordered the report be filed by March 22, 2016. Monica moved for review of the LPC's recommendations on June 20, 2016. In her motion, she argued that Welsh's recommendations were incorrect and that Welsh was not qualified as an LCM or an LCP.

The trial court addressed the issue of whether Welsh was qualified as an LPC under Local Rule 15. The trial court ruled that Welsh was qualified and that Local Rule 15 did more than just change the name of the appointee, as Monica argued.

The trial court applied the statutory factors for determining the best interests of the children. The trial court found that "[d]ue to the extensive evidence presented by

6

[Monica's] eight witnesses and [Shane's] seven witnesses over two and a half days, the [c]ourt is in position to apply such factors for itself," as opposed to simply adopting Welsh's application of the statutory factors. The trial court applied the K.S.A. 2017 Supp. 23-3203 factors:

"'Age of the children': Gunner was 10 and Zoey was 6 at the time of the LPC recommendation and 10 and 7 at the time of the hearing. The Court finds the age of the children would not be a reason in favor of changing or not changing the current parenting time.

"'The emotional and physical needs of the child': The Court finds the physical needs of [the] children are being met by both parents. The Court finds the emotional needs of the children are being met by [Shane]. The Court finds the emotional needs of the children are not being met by [Monica].

"'The interaction interrelationship of the children—of the child with parents, siblings, and any other person who may significantly affect the child's best interest': The Court finds Doctor Kerr's testimony demonstrates the children's interaction and interrelationship with their mother is not presently consistent with their best interest.

"'The child's adjustment to the child's home, school, community': The Court finds, by all accounts, the children have adjusted well to their home, school and community.

"'The willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for continuing relationship between the child and the other parent': The Court finds neither parent complained about the other parent's respect or appreciation for said bond.

"The Court finds [Shane] demonstrated support for [Monica]'s bond with the children to be improving—to be improved by agreeing with the recommendation for therapy for her with the children.

"'Evidence of spousal abuse, either emotional or physical': The Court finds no evidence was presented regarding such.

"'The ability of the parents to communicate, cooperate, and manage parental duties': The Court finds both parents testified as to concerns with the other parent not communicating important events timely. [Shane] acknowledged not having been perfect and a willingness to do better in the future.

"[Shane] works in El Dorado near the children's school, and the Court finds is, therefore, better able to . . . manage some parental duties, such as taking any forgotten items to the school or picking up the children, if ill. The Court finds [Monica] works in downtown Wichita.

"When [Monica] had the Oxycodone/Acetaminophen concern, she contacted the police and DCF was involved. The Court finds when [Shane] had a concern [Monica] left marks on [Z]oey from spanking, he did not involve the police or DCF. The Court finds [Shane], instead, had his attorney contact [Monica]'s attorney.

"'The school activity schedule of the child': The Court finds both parents appear able to accommodate the children's school activity schedules. [Shane] resides and works closer to the children's school activities.

"'The work schedule of the parties': The Court finds both parties testified they work a typical workday schedule. [Monica] testified to flexibility in her schedule as to start and end time. [Monica]'s supervisor testified, but did not address [Monica]'s flexibility. [Monica]'s start time in the past has [led] her mother to taking the children to school instead of [Monica].

"'The location of parties' residences and places of employment': The Court finds [Shane] resides and his place of employment are in El Dorado. The Court finds [Monica] resides on the east side of Wichita and her place of employment is downtown Wichita.

"'The location of the child's school': The Court finds the children attend Skelly Elementary School in El Dorado. [Shane]'s residence and place of employment is much closer to the children's school than [Monica].

"The Court finds Factors O, P, Q, and R are not applicable to this matter."

The trial court summarily ruled against Monica over her objections to Welsh's June 2, 2016 recommendations. The trial court held: "The evidence presented at the hearing herein supports each of those recommendations as discussed in the application of the statutory factors; specifically, with regard to therapy, the testimony of the children's therapist, Doctor Amy Kerr, the needs for the children to have therapy with their mother in order to improve that relationship."

The trial court ordered that Shane should continue to have primary residential custody of the children and that the children participate in therapy. The trial court stated:

> "[T]hese conclusions . . . are made independent of the LPC's recommendations due to the extensiveness of the two and a half day trial held herein.
>
> "The Court finds the conclusions reached herein are in the best interest of the minor children, regardless of which party bears the burden of proof.
>
> "The Court finds [Monica] has failed to satisfy the burden Rule 15 places on her to prove the LPC's recommendations erroneous or inappropriate and a change of residency is in the best interest of the children."

*Did the Trial Court Err in Appointing Welsh as a Limited Parenting Coordinator?*

Monica argues that the court-appointed LPC was statutorily unqualified to serve as an LPC under K.S.A. 2017 Supp. 23-3508(d). Shane responds by asserting that Welsh's qualifications as an LPC are not governed by state statute but rather by the Thirteenth Judicial District's Local Rule 15. Shane thus argues that Welsh was qualified to serve as an LPC for purposes of this case on remand. In making his argument, Shane relies on this court's decision regarding case managers in *In re Marriage of Hall*, 45 Kan. App. 2d 1, 5, 246 P.3d 404 (2010).

This issue involves interpretation of statutes and local rules, so it is a question of law subject to unlimited review. *In re Marriage of Owens*, 2015 WL 5750473, at *2; accord *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 606, 375 P.3d 304 (2016).

To begin, "case management is a tool that may, but need not, be deployed to deescalate frayed emotions that can accompany child custody issues and to bring the parties together in a controlled environment to facilitate structured communication and negotiation in an effort to resolve disagreements over those issues." *In re Marriage of*

*Langley*, No. 115,829, 2017 WL 1534853, at *6 (Kan. App. 2017) (unpublished opinion). K.S.A. 2017 Supp. 23-3508(a) allows the court to order case management "when appropriate, of any contested issue of child custody or parenting time at any time, upon the motion of a party or on the court's own motion." The purpose of case management is to enhance the enforcement of court-ordered child visitation rights and parenting time by establishing a simplified, expedited procedure to provide justice without necessitating the assistance of legal counsel. K.S.A. 2017 Supp. 23-3401(a).

K.S.A. 2017 Supp. 23-3508(d) sets forth the requirements for an individual to qualify as an appointed case manager:

"To qualify as an appointed case manager, an individual shall:

"(1) (A) Be currently licensed in Kansas as a licensed psychologist, licensed masters level psychologist, licensed clinical psychotherapist, licensed professional counselor, licensed clinical professional counselor, licensed marriage and family therapist, licensed clinical marriage and family therapist, licensed master social worker or licensed specialist social worker;

(B) be currently licensed to practice law in Kansas and have at least five years of experience in the field of domestic relations law or family law; or

(C) be a court services officer and have training in domestic relations cases as prescribed by the district court in which the case is filed;

"(2) be qualified to conduct mediation;

"(3) have experience as a mediator;

"(4) attend one or more workshops, approved and as ordered by the district court in which the case is filed, on case management; and

"(5) complete a minimum number of continuing education hours regarding case management issues or abuse and control dynamics issues as established and approved by the supreme court."

10

Our Legislature changed the requirements for appointed case managers in 2012. See L. 2012, ch. 162, § 18. Before 2012, case managers were not required to possess a license as now required under K.S.A. 2017 Supp. 23-3508(d)(1)(A)-(C).

This court previously held that Welsh met only the qualifications prescribed by subsections two through five of K.S.A. 2014 Supp. 23-3508(d). This court further determined that Welsh did not meet the requirements under subsection 1(A), 1(B), or 1(C) and was, therefore, unqualified to participate in the case management proceedings. This court also held that the Thirteenth District Court's Local Rule 14 could not be used to circumvent K.S.A. 2014 Supp. 23-3508(d) in appointing case managers. As a result, this court reversed and remanded the case for further proceedings consistent with its opinion. *In re Marriage of Owens*, 2015 WL 5750473, at *4-5.

*Qualifications*

The Thirteenth Judicial District Court's Local Rule 14 was repealed after the trial court made its first determination in this case. Local Rule 15 replaced Local Rule 14. Under Local Rule 15, a person is appointed to assist in case management proceedings as an LPC rather than an LCM. Under Local Rule 15, the trial court may appoint an LPC if the LPC is

> "currently qualified as an appointed case manager under the provision of K.S.A. 23-3508; or . . . currently approved as a mediator qualified to mediate child custody or parenting cases under the provision of Kansas Supreme Court Rule 902; or . . . [has] sufficient training, resources and experience to undertake the case as determined by the judge making the appointment of a limited parenting coordinator."

Local Rule 15 defines an LPC as someone who "meet[s] with parents in resolving conflict in a way that is beneficial to the children, and . . . make[s] appropriate recommendations to the [c]ourt." Local Rule 15 titles the proceeding as "Limited

11

Parenting Coordination" and tries to differentiate "Limited Parenting Coordination" from the typical case management proceeding in the same way that Local Rule 14 attempted to do. Local Rule 15 states:

> "In contrast to the other alternative dispute resolution procedures . . . [i]n limited parenting coordination, the [c]ourt only assigns certain specified issues to the parenting coordinator. . . . [T]he recommendations of the parenting coordinators do not become the order of the [c]ourt except as otherwise stated in this local rule. . . . [T]he assignment to limited parenting coordination ends when a written agreement has been approved by the parties, or when the parenting coordinator files recommendations as to the issues specified by the [c]ourt. The [c]ourt at any time, upon motion of a party, upon written request by the limited parenting coordinator, or on the [c]ourt's own motion, may terminate all or part of the assignment."

This language is identical to the language previously found in Local Rule 14.

This court previously treated the process under Local Rule 14, which was titled "Limited Case Management," as a case management proceeding under K.S.A. 2014 Supp. 23-3507 et seq. This court concluded that "the terms of the statute applied to Welsh's appointment as LCM, and the district court erred in finding she did not need to be qualified in accordance with K.S.A. 2014 Supp. 23-3508(d)." *In re Marriage of Owens*, 2015 WL 5750473, at *3.

The trial court entered its order for limited case management in April 2013. The trial court appointed Welsh as an LCM for those proceedings. After this court reversed the trial court's appointment because Welsh was unqualified to act as an LCM, the trial court reappointed Welsh as an LPC on December 30, 2015. On remand, the trial court ruled as follows:

> "3. Based upon the provisions of Local Court Rule 15, the court finds that Ronda Welsh is currently approved as a mediator qualified to mediate child custody or parenting

12

cases pursuant to Kansas Supreme Court Rule 902, and has sufficient training, resources and experience to undertake the case as determined by the court, and the parties are ordered to return to Ronda Welsh for a recommendation on the issues of custody and parenting time."

Thus, the trial court appointed Welsh under Supreme Court Rule 902 (2018 Kan. S. Ct. R. 548) and under Local Rule 15's third catch-all provision.

Rule 902 states that "[t]he qualifications for dispute resolution providers and trainers apply to individuals who handle cases referred by the state courts or under the Dispute Resolution Act, K.S.A. 5-501 *et seq*." Under Rule 902(B)(2), mediators are qualified if they:

"(a)    Complete the required training for the types of cases the applicant wishes to receive approval to mediate,

"(b)    Sign an agreement to follow the ethical standards of Supreme Court Rule 903,

"(c)    Co-mediate with or be supervised by an approved mediator for three cases during the first year of approved mediation practice with cases in the area the trainee took his/her training . . . ,

"(d)    Comply with Supreme Court Rule 904 concerning continuing mediator education, and

"(e)    Be of good moral character and be mentally and emotionally fit to engage in the active and continuous practice of mediation."

These qualifications were incorporated into the 2012 amendments made to K.S.A. 2017 Supp. 23-3508(d). See L. 2012, ch. 162, § 18, effective July 1, 2012. The comments to Rule 902 clarify that

"[c]onditions, including the availability of individuals with mediation training and experience, will vary between rural and urban areas. The minimum qualifications are listed to give judges and approved centers a beginning point to establish local policy.

13

> Judges and centers are encouraged to *add requirements as necessary* for the type of case
> to be mediated and the availability of individuals with *additional qualifications*."
> (Emphasis added.) Supreme Court Rule 902, Comment (2018 Kan. S. Ct. R. 552).

Kansas Supreme Court Rules make clear that "a reference to a statute includes any subsequent amendment to the statute." Rule 1.01(a) (2018 Kan. S. Ct. R. 1). As a result, Rule 902 incorporates any changes made to the dispute resolution statutes. Additionally, the language of Rule 902 makes it clear that it does not encourage relaxation of the qualifications. The rule does not seek to give another way under which a case manager may be appointed. Thus, it may not be used as a way to circumvent the relevant statutory requirements.

The similarities between Local Rule 14 and Local Rule 15 support Monica's assertion that the rules are the same but for the difference in titles. Regardless of title, the trial court's decision is contrary to this court's previous holding and to the statutory requirements. The position of an LCM is identical to the position of an LPC. This court already held that Welsh was appointed to this case as a case manager. 2015 WL 5750473, at *3-4. There is no evidence that the duties or powers of an LPC were somehow limited more than those given to an LCM. Moreover, Welsh has not obtained the required qualification to serve as a case manager under K.S.A. 2017 Supp. 23-3508(d)(1)(A)-(C).

During the previous appeal, Shane made the same argument that he makes now: Welsh was appointed under Local Rule 15, not under state statute, and is, therefore, qualified to serve as a case manager. Previously, in responding to Shane's argument, this court held:

> "We do not agree that the LCM was appointed case manager solely under the
> Local Rule to the exclusion of the Kansas statute. That assertion contradicts the plain
> language of the district court's order for limited case management in this case, which
> provides: 'The parties shall enter into limited case management *consistent with K.S.A. 23-*

14

*3507 et seq.* with Ronda Welsh.' That statutory reference would obviously include K.S.A. 2014 Supp. 23-3508(d), which states the required qualifications for case managers." *In re Marriage of Owens*, 2015 WL 5750473, at *3.

Local Rule 15 does not to refer to K.S.A. 2017 Supp. 23-3507 et seq. or its related statutes, other than K.S.A. 23-3508 (referring to K.S.A. 23-3508 as one of the three ways in which a person may qualify as an LPC). Even without citing to the statute, this court clarified that the problem was still apparent and held:

> "But even had no reference to [K.S.A. 2014 Supp. 23-3508] been made in the relevant order, the statute was in effect at the time Welsh was appointed as LCM. Shane fails to show that a local rule trumps a conflicting state statute or that the statutory qualifications for appointed case managers do not apply to LCMs. We do not believe such a reading of the statute would be reasonable. As the 2012 amendments to K.S.A. 23-3508 state: '(e) On and after September 1, 2012, *any case manager* appointed by the court prior to, on or after July 1, 2012, shall meet the requirements of subsection (d).' Welsh was appointed as an LCM on April 4, 2013, and falls within the term 'any case manager.' Although her *role* may have been circumscribed by Local Rule, the required *qualifications* to act as a case manager were not. Accordingly, we find that the terms of the statute applied to Welsh's appointment as LCM, and the district court erred in finding she did not need to be qualified in accordance with K.S.A. 2014 Supp. 23-3508(d)." *In re Marriage of Owens*, 2015 WL 5750473, at *3.

While the trial court appointed Welsh under Rule 15 as an LPC, the trial court was still acting under its 2013 order requiring the parties to participate in limited case management proceedings. Additionally, whether defined as an LCM or an LPC, Welsh's appointment falls within the term "any case manager." Welsh must, therefore, meet the statutory qualifications of a case manager. K.S.A. 2017 Supp. 23-3508(d) lists those qualifications clearly. Welsh does not meet those qualifications. Nor does Shane argue that Local Rule 15 somehow trumps the statutory requirements.

15

Shane relies on this court's decision in *In re Marriage of Hall*, 45 Kan. App. 2d at 5, in arguing that "Limited Parenting Coordination is 'a process created and governed not by state statute but by [Thirteenth Judicial District] local rules.'" Shane's reliance on this case to support his argument is flawed for two reasons. First, *In re Marriage of Hall* predates the 2012 legislative amendments to K.S.A. 2017 Supp. 23-3508(d). Second, the *Hall* decision was not based on "limited parenting coordination," the Thirteenth Judicial District's Local Rule 15, or the qualifications of a case manager. In that case, this court was tasked with deciding whether the trial court abused its discretion by failing to adopt the LCM's recommendation. Before holding that the trial court acted within its discretion, this court differentiated between case management and limited case management proceedings.

> "[T]he district court referred this matter not to Case Management but to Limited Case Management. As such, the Limited Case Manager's recommendation did not become the order of the court upon submission; Nichole [Hall—child's mother] was not required to file a motion challenging the recommendation in order to keep the recommendation from becoming the order of the court; and Nichole did not bear the burden of establishing that the Limited Case Manager's recommendation was erroneous or inappropriate in order for the district court to reject the recommendation of the Limited Case Manager. Instead, Sedgwick County local rule required Andrea [Leffew—child's grandmother]—as the party who wanted the district court to adopt the Limited Case Manager's recommendation—to file a motion with the district court requesting adoption of the recommendation. Significantly, no such motion was ever filed.
>
> "Based on the facts set forth above, we conclude the district court did not abuse its discretion in failing to adopt the recommendation of the Limited Case Manager." *In re Marriage of Hall*, 45 Kan. App. 2d at 5-6.

Unlike Nichole, Monica was given the burden of establishing that the recommendations made by Welsh were erroneous or inappropriate in order for the trial court to reject the recommendations. Because *Hall* predates the relevant statutory amendments and is also

16

irrelevant as to whether Welsh was qualified to serve as an LPC, Shane's reliance on *Hall* is misplaced. Thus, the trial court erred in appointing Welsh as an LPC.

*Harmless Error*

When an error implicates a statutory but not a federal constitutional right, the party benefiting from the error must persuade the court that there is no reasonable probability that the error affected the trial's outcome in light of the entire record for it to be found harmless. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

Shane makes no argument that the error made by the trial court was harmless. Moreover, Shane also failed to make a harmlessness argument when this case was first appealed. This court will still analyze the trial court's error in appointing Welsh as an LPC for harmless error. See *In re Marriage of Owens*, 2015 WL 5750473, at *5.

In an attempt to immunize its legal conclusions from the taint of the LPC's recommendations, the trial court held that the LPC's recommendations played no part in its conclusions of law: "[T]hese conclusions [of law] . . . are made independent of the LPC's recommendations due to the extensiveness of the two and a half day trial held herein."

Nevertheless, under the trial court's order of judgment, the trial court explicitly found the following concerning the LPC:

•"[T]he Court found Ronda Welsh qualified under Local Rule 15, and LPC was ordered for the parties with Ronda Welsh."

•Welsh testified and corrected her report that she was not acting as an LCM but as an LPC at the evidentiary hearing on December 7, 2016.

17

•"The Court finds . . . "[t]he changes in Local Rule 15 from Local Rule 14 were not merely a name change as [Monica] alleges. . . . The Court finds Ms. Welsh does qualify for LPC under Rule 15."

•"The Court finds the fourth, fifth and sixth issues addressed in [Monica's] Motion state an objection to each of the recommendations made in LPC with regard to primary residence, parenting time, and therapy. The evidence presented at the hearing herein supports each of those recommendations as discussed in the application of the statutory factors . . . ."

•"The Court finds [Monica] has failed to satisfy the burden Rule 15 places on her to prove the LPC's recommendations erroneous or inappropriate and a change of residency is in the best interest of the children."

Clearly, the trial court has mixed its conclusions of law together with its factual findings. For example, the trial court found that Monica had failed to satisfy the burden that Local Court Rule 15 placed on her to prove the LPC's recommendations were erroneous or inappropriate and a change of residency was in the best interests of the children. Instead of a factual finding, this finding is a legal conclusion flowing from the burden placed on Monica under Local Rule 15.

Moreover, the trial court's holding contains two conjuncts that are logically contradictory:

(1) The trial court's conclusions of law could not have been both made independent of the LPC's recommendations because of the extensiveness of the 2 1/2-day trial conducted in this matter. And (2) The conclusion that Monica had failed to satisfy the burden Local Rule 15 placed on her to prove that the LPC's recommendations were

18

erroneous or inappropriate and that a change of residency was in the best interests of the children.

Of contrary propositions, as in this example, both cannot be true. Nevertheless, both may be false. Thus, if one is known to be true, the other proposition must be false. See Joseph, The Trivium: The Liberal Arts of Logic, Grammar, and Rhetoric, pp. 114-15 (2002).

The relation between these two conjuncts can be reconstructed as a conjunctive syllogism:

(1) The trial court held that its conclusions of law were made independent of the LPC's recommendations and the trial court held that Monica had failed to satisfy the burden Local Rule 15 placed on her to prove that the LPC's recommendations were erroneous or inappropriate.

(2) The trial court explicitly concluded in its order that Monica had failed to prove that the LPC's recommendations under Local Rule 15 were erroneous or inappropriate.

(3) Therefore, the trial court's holding that its conclusions of law were made independent of the LPC's recommendations was incorrect.

Here, there is a logical contradiction asserted in the major premise of the conjunctive syllogism. Based on the trial court's order, it was inconsistent for the trial court to hold that its conclusions of law were made independent of the LPC's recommendations and also hold that the LPC's recommendations went unrebutted by Monica. Moreover, if the trial court's conclusions of law were made independent of the LPC's recommendations, why would it matter if Monica had failed to satisfy her burden under Local Rule 15? It would be a so-what moment. So, based on the trial court's order

19

that its conclusions of law were made independent of the LPC's recommendations, it would not have been important or necessary for the trial court to determine whether Monica had met her burden under Local Rule 15. It would have been totally irrelevant under the trial court's holding that its conclusions of law were made independent of the LPC's recommendations.

Moreover, the trial court's findings and conclusions are confusing. In one place, the trial court states that "Local Rule 15 would place the burden of proof on Monica as the disagreeing party." Next, "[t]he Court finds the conclusions reached herein are in the best interests of the minor children, *regardless of which party has the burden of proof.*" (Emphasis added.) Finally, "[t]he Court finds [that Monica] has failed to satisfy the burden Rule 15 places on her to prove the LPC's recommendations [are] erroneous or inappropriate and a change of residency is in the best interest of the children."

Here, the trial court is trying to have two incompatible things: First, the trial court has held that its conclusions of law were made independent of the LPC's recommendations. Second, the trial court has held that Welsh was a properly qualified LPC under Local Rule 15 and that all of her recommendations were valid because Monica failed to satisfy the burden Local Rule 15 placed on her to rebut them. Based on a popular English proverb or figure of speech, it seems that the trial court would have its cake and eat it too.

The trial court's conclusions of law were made either independent of the LPC's recommendations or they were not made independent of the LPC's recommendations. Here, we know that trial court's conclusions of law were not made independent of the LPC's recommendations based on the trial court's order in this matter. Thus, the trial court's holding that its conclusions of law were made independent of the LPC's recommendations topples like a house of cards. As a result, the trial court committed a

20

legal error in its holding that its conclusions of law were made independent of the LPC's recommendations.

A parent has a fundamental liberty interest in the relationship with his or her children. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). As pointed out by the contradictory conjuncts, the trial court's conclusions of law were not made independent of Welsh's recommendations. Thus, the trial court's holding that Monica had failed to rebut the validity of Welsh's recommendations was very harmful. Moreover, this court has previously concluded that the error of appointing Welsh as a case manager was not harmless error. *In re Marriage of Owens*, 2015 WL 5750473, at *5. Indeed, Monica argues in her brief that the process was tainted: "Welsh testifying, and issuing reports, after being found by this court unqualified, tainted the process, and because of that, the [trial] court abused its discretion in this case." For these reasons, we reverse the trial court's decision and remand this matter to a different judge with directions to conduct a new evidentiary hearing.

Because the record is inadequate to address the other contentions raised by Monica in her appeal, we have not considered those contentions.

Reversed and remanded to a different judge with directions to conduct a new evidentiary hearing in this matter.

21